## BENT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6449.

Circuit Court of Appeals, Ninth Circuit.

Feb. 8, 1932.

Julius V. Patrosso, of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and John G. Remey, John H. McEvers, and Wm. Earl Smith, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and James K. Polk, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

Petitioner is a member of the copartnership of Bent Bros., engaged in the general contracting business, constructing reservoirs, dams, and other similar work. The partnership made its returns to the Commissioner of Internal Revenue upon what is called the "long term completed contract" basis, by which the profit or loss incurred upon a contracting job covering more than one year was included in the return of income for the taxable year in which the job was completed. This was a consistent practice of the partnership from 1913 to 1923. A deficiency tax for the year 1920 was assessed by the Commissioner upon the individual income and surtaxes for the year 1920 to the petitioner in the amount of $12.73. Petitioner sought a review of this action by the Board of Tax Appeals. The Board sustained the method and manner of assessment by the Commissioner, but fixed the amount of the tax at $60.50. The petitioner seeks to review this order of the Board of Tax Appeals.

The gist of the petitioner's contention is that the return and the assessment based thereon was erroneous for the reason that the partnership books were kept on the accrual basis in such fashion that the books correctly reflected the income for each taxable year, and therefore that the assessment must be made for the taxable years 1920 and 1922 in accordance with the first clause of subdivision (b) of section 212 of the Revenue Act of 1918, chapter 18 (40 Stat. 1057, 1064). Consequently it is argued that the alternate method permitted by section 212 under the second clause of subdivision (b) is not applicable, and, for the same reason, that the rules of the Treasury Department permitting returns upon the long-term contract are not controlling. Subdivision (b) of section 212 is in part as follows: "(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *"

The taxes of the petitioner were assessed according to the terms of section 218 of the Revenue Act of 1918 (40 Stat. 1070) with reference to individuals carrying on business

in a partnership, and the sole question involved on this petition to review the action of the Board of Tax Appeals is the correct method of computing the income of the partnership.

The method of accounting adopted by Bent Bros. is stated in the respondent's brief, and this statement has been accepted by the petitioner as the correct statement of the situation, and it is as follows:

"A separate account was kept in the partnership books for each project undertaken. At the end of the month this account was charged with the cost, whether paid or not, of all labor, materials, and direct expenses incurred during the month and chargeable to the project. At the close of the year the account was charged with its proportion of the indirect expenses, or overhead, of the business incurred during the year, whether paid or not. The overhead was distributed over the several projects upon which work had been performed during the year in the same proportions that the total costs of each project incurred during the year bore to the total costs of all projects incurred during the year. If the contract provided for payment upon completion of the project the customer's account was charged and the separate account of the project was credited when all work was completed and accepted. If payment was to be made as the work progressed, upon the basis of monthly estimates by the customer's engineer of work completed during the month and the amount of payment due therefor, the customer's account was charged, and the separate account of the project was credited, as such estimates were received, with the amount of payment shown to be due by the estimate. If the contract provided that a percentage of the amount due on each estimate was to be withheld pending completion and acceptance of the project, the separate account of the project was credited only with the payment due and the amount of the holdback was credited to 'Retention Account.' No accounting was made for any gain or loss on any project until the work was completed and accepted. Until that time the debit balance in a project account was considered an investment and carried on the books as an asset. When work was completed and the project accepted, the project account was closed by transferring the balance representing gain or loss to profit and loss account.

"The net income reported by the partnership in all returns filed for Federal income-tax purposes was computed in accordance with the method of accounting employed in keeping the books.

"During 1920 the partnership was engaged on four projects which were not completed in the same taxable year in which work was begun. Devil's Gate Dam was commenced in 1919 and completed in 1920; work on Huntington Park Reservoir began in 1920 and was completed in 1921; work on Rodeo Drain started in 1920 and was completed in 1921; and work on San Dimas Dam began in 1920 and was completed in 1922.

"Devil's Gate Dam was constructed within the Los Angeles County Flood Control District. This contract provided that compensation should be paid to the partnership upon the basis of monthly estimates of materials furnished and work completed. Compensation shown to be due by the monthly estimates of the Chief Engineer of the Flood Control District were usually paid by the tenth of the following month.

"In accordance with the method of accounting employed in keeping the books, the partnership included in the return for 1920 the entire compensation received for and all of the costs and expenses incident to the construction of Devil's Gate Dam which was completed in that year, but did not include the income or expenses relating to the three other projects commenced but not completed in that year. It was the partnership's custom to report income from each job when it was completed."

This method of accounting and reporting income was in strict accord with the regulations of the Treasury Department. Treasury Regulation No. 45, article 36, provides as follows: "Art. 36. Long-term contracts. —Persons engaged in contracting operations, who have uncompleted contracts, in some cases perhaps running for periods of several years, will be allowed to prepare their returns so that the gross income will be arrived at on the basis of completed work; that is, on jobs which have been finally completed any and all moneys received in payment will be returned as income for the year in which the work was completed. If the gross income is arrived at by this method, the deduction from such gross income should include and be limited to the expenditures made on account of such completed contracts. * * * "

Section 212 of the Revenue Act of 1918, thus interpreted by the regulations of the Treasury Department (Regulation 45, art. 36) has been re-enacted in subsequent reve-

nue laws without change. Revenue Act of 1921, chap. 136, 42 Stat. 227, Revenue Act of 1924, c. 234, 43 Stat. 253, Revenue Act of 1926, c. 27, 44 Stat. 9 and Revenue Act of 1928, c. 852, 45 Stat. 791.

The re-enactment of the statute in exactly the same terms where the statute has been interpreted by the regulations of the Treasury Department is "persuasive evidence of legislative approval of the regulation." Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 117, 74 L. Ed. 457; Trust No. 5833, Security-First Nat. Bank of Los Angeles v. Welch, Collector, etc., 54 F.(2d) 323, decided by this court December 7, 1931. Even in the absence of subsequent legislation the practical interpretation by the Department of the statute will not be disturbed if the statute is ambiguous or doubtful. "It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons." Brewster v. Gage, page 336 of 280 U. S., 50 S. Ct. 115, 117; U. S. v. Jackson, 280 U. S. 183, 50 S. Ct. 143, 74 L. Ed. 361. Petitioner concedes that returns may properly be made and assessments levied upon the long-term completed contract basis where the contract is a lump sum contract, but contends that, where the contract is upon the unit price basis, it can be clearly determined from the books of the taxpayer just what income has accrued to the taxpayer during the taxable year, and for that reason a resort to the alternate basis is not permissible under the statute and the regulation of the Treasury Department. Regulation 45, art. 36.

It is well settled and it is conceded that the taxpayer may make his returns upon either a cash basis or accrual basis "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." Revenue Act of 1918, § 212, subdivision (b) supra. The respondent contends that the statute permits and the regulations expressly authorize a modification of the accrual method of bookkeeping and returns based thereon in cases of long-term contracts, while petitioner in effect contends that this method of making returns is not permissible if the books kept on accrual basis clearly reflect the income of the taxpayer for the taxable year. As applied to the situation in the case at bar, the petitioner contends that, notwithstanding the fact that it kept separate job accounts showing disbursements and receipts on each job and apportioned to the job accounts at the end of each year its pro rata of the overhead expenses, and did not carry over into its general accounting system the profit or loss of each job until the job was completed and the account closed, it was at all times readily ascertainable from the books of the partnership what the income of the partnership was for the taxable year upon the accrual basis, and therefore, notwithstanding the manner in which its books were kept, and notwithstanding the manner in which it made its returns to the collector of internal revenue, it was entitled to have all income received from jobs during the current year treated as income from which expenditures upon that job should be deducted. This contention relates back to the proper definition of "income," it being contended in effect that, when the taxpayer adopts the cash basis of accounting, the income for the current year is correctly reflected by the difference between the cash receipts and disbursements, and likewise, when the accounts are kept upon the accrual basis, that the income is correctly reflected by the difference between the obligations incurred and income earned regardless of the actual receipts and disbursements. A moment's consideration indicates that the practical determination of income is one of great difficulty. Taxable income upon the accrual basis may be and usually is very different from the taxable income for the same year if it were determined upon the cash system of bookkeeping. In the long run the two systems would probably result in about the same amount of taxes were it not for the increase and decrease of the tax rate and the change in the rules as to exemptions and methods of taxation. In the choice of the accrual or cash basis method of accounting, the matter is left to the discretion of the taxpayer regardless of the actual effect upon the amount of the tax, and there seems no good reason why in the special cases of long term contracts the taxpayer should not have the right to suspend in the job account both expenses and receipts until it is ascertained whether on the whole job there has been a profit or loss. That was done by the taxpayer in this case. It is true that there is a more definite basis of ascertaining the amount of profit earned in the case of unit price contract or income upon a contract on the basis of cost plus a fixed fee than there is on a lump sum contract where payments reflect only a portion of the amount earned. But in either event the contract is a unit, and, until the contract is completed and accepted, it cannot be definitely known what the profit

may be or what loss may be suffered by the contractor. The books are full of instances where, by reason of defective work or unsuspected obstacles or changes in prices of labor and materials, contractors have suffered losses, notwithstanding the unit price basis and in the case of the contract based upon cost plus a fixed fee the work may be prolonged over a long period of time by reason of difficulties in the work, or the fee might be diminished or wholly lost because of inability to complete the contract. These observations, familiar to all, are made merely for the purpose of indicating that under such contracts the income, that is, the profit, derived from a contract is not necessarily reflected by the payments made thereunder for a particular period, whether such payments are upon a lump sum contract basis, or unit price basis, or cost plus a fixed fee basis. The point we have suggested may be illustrated by the recent decision of the Supreme Court in Lucas, etc., v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538. There the books of the taxpayer were kept upon the accrual basis. In 1919 the taxpayer discharged the sales manager in violation of his contract of employment. He sued for damages, and in the year 1923 the taxpayer paid a judgment recovered by the employee for breach of the contract which occurred in 1919. The taxpayer sought to have this payment deducted from its income for the year 1919 upon the ground that its books were kept on the accrual basis, and that the obligation to pay damages for breach of contract accrued at the time of the discharge and not at the time of payment of the judgment. The Supreme Court held that this contention could not be sustained, and, in connection with the decision, Justice Brandeis, speaking for the court, made some general observations upon the theory of the income tax law, which are applicable in principle to the case at bar. He said: "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Weiner, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test.

And the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the act. Its interpretation of the statute and the practice adopted by it should not be interfered with unless clearly unlawful."

In Burnet, Commissioner v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 151, 75 L. Ed. 383, the Supreme Court had occasion to deal with a long-term contract under which the work was carried on at a loss. The taxpayer each year returned its expenditures and receipts, including those made and received upon the dredging contract. The contractor abandoned the work in 1915 and brought suit against the government to recover damages from the government in the amount that its expenditures under the contract exceeded its receipts, and judgment was recovered for that amount ($176,271.88). The Commissioner contended that this amount, although it was equal to and no greater than the loss suffered by the contractor because of the contract, should nevertheless be returned as income in the year in which it was received, and that, in determining the tax of the taxpayer for that year, that amount should be added to its other income for that year. The Court of Appeals held that this method was erroneous, but the Supreme Court sustained the Commissioner's ruling. It should be observed that the contention by the taxpayer in that case was diametrically opposed to the contention made in the case at bar. There the taxpayer contended that the taxable gain or profit "can only be net profit ascertained on the basis of particular, transactions of the taxpayer when they are brought to a conclusion." It view of the character of the contention there raised and the relevancy of the reasoning of the court upon that question to the principles involved in the case at bar, and in view of the fact that the regulations of the Treasury Department to long-term contracts were referred to by the court (Regulations 45, art. 36), we quote from that decision at length:

"If respondent's contention that only gain or profit may be taxed under the Sixteenth Amendment be accepted without qualification, see Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Doyle v. Mitchell Brothers Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054, the

question remains whether the gain or profit which is the subject of the tax may be ascertained, as here, on the basis of fixed accounting periods, or whether, as is pressed upon us, it can only be net profit ascertained on the basis of particular transactions of the taxpayer when they are brought to a conclusion.

"All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt. Under sections 230, 232 and 234 (a) of the Revenue Act of 1918, 40 Stat. 1057, respondent was subject to tax upon its annual net income, arrived at by deducting from gross income for each taxable year all the ordinary and necessary expenses paid during that year in carrying on any trade or business, interest and taxes paid, and losses sustained, during the year. By sections 233 (a) and 213 (a) gross income 'includes * * * income derived from * * * business * * * or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.' The amount of all such items is required to be included in the gross income for the taxable year in which received by the taxpayer, unless they may be properly accounted for on the accrual basis under section 212 (b). See United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Aluminum Castings Co. v. Routzahn, 282 U. S. 92, 51 S. Ct. 11, 75 L. Ed. 234. * * *

"But respondent insists that if the sum which it recovered is the income defined by the statute, still it is not income, taxation of which without apportionment is permitted by the Sixteenth Amendment, since the particular transaction from which it was derived did not result in any net gain or profit. But we do not think the amendment is to be so narrowly construed. A taxpayer may be in receipt of net income in one year and not in another. The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or loss. * * *

"Under the statutes and regulations in force in 1920, two methods were provided by which, to a limited extent, the expenses of a transaction incurred in one year might be offset by the amounts actually received from it in another. One was by returns on the accrual basis under section 212 (b), which provides that a taxpayer keeping accounts upon any basis other than that of actual receipts and disbursements, unless such basis does not clearly reflect its income, may, subject to regulations of the Commissioner, make its return upon the basis upon which its books are kept. See United States v. Anderson, and Aluminum Castings Co. v. Routzahn, supra. The other was under Treasury Regulations (article 121 of Reg. 33 of Jan. 2, 1918, under the Revenue Acts of 1916 and 1917; article 36 of Reg. 45, April 19, 1919, under the Revenue Act of 1918) providing that in reporting the income derived from certain long term contracts, the taxpayer might either report all of the receipts and all of the expenditures made on account of a particular contract in the year in which the work was completed, or report in each year the percentage of the estimated profit corresponding to the percentage of the total estimated expenditures which was made in that year."

We think it clear from the foregoing construction that Regulation 45, article 36, is a valid regulation that has been approved by Congress, that it is properly applicable to the situation presented by the record, and that the taxpayer had an option which he exercised to keep his books and make his return upon the long-term completed contract basis, and that the decision of the Board of Tax Appeals upon that point is correct.

With reference to taxes for the year 1922, it appears that in computing the tax the taxpayer made a mistake in addition amounting to $1,440. The total should have been $65,177.80, but the taxpayer incorrectly made the total $66,617.80. The Commissioner on examining the return increased the taxable income by $1,359.09 and computed the tax at $65,928.78. The petitioner filed a claim in abatement for the difference between the amount of taxes paid, $66,617.80, and the taxes as assessed by the Commissioner, $65,928.78. Upon consideration of the claim in abatement the Commissioner claimed an understatement of taxable income upon which the tax amounted to $671.02 and noti-

fied the taxpayer that the overassessment "will be made the subject of certificates of overassessment which will reach you in due course. * * * " The Board of Tax Appeals held that under these circumstances there was no determination of the deficiency within the meaning of sections 273 and 274 of the Revenue Act of 1926 (26 USCA § 1047 et seq.), and that therefore the Board had no jurisdiction in the matter. Petitioner claims that the original assessment by the Commissioner correcting the taxpayer's mistake in addition should be considered as the amount previously abated in determining whether or not the additional assessment was a determination of deficiency within the meaning of section 273 of the Revenue Act of 1926, supra (26 USCA § 1047).

The only reason that the petitioner objects to the decision of the Board of Tax Appeals with reference to the year 1922 is because of his desire to have the taxes for that year redetermined upon the basis which he contends should have been applied to both the years 1920 and 1922. In view of our conclusion he is not prejudiced by the ruling of the Board of Tax Appeals. As we understand the record, petitioner makes no special point upon the tax of 1922 other than the general claim which we have discussed and decided.

Order affirmed.