## THE L. A. WELLS CONSTRUCTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102554. Promulgated February 11, 1942.

*Meyer A. Cook, Esq.,* and *Frank W. Koral, Esq.,* for the petitioner.
*W. W. Kerr, Esq.,* for the respondent.

304

**OPINION.**

TURNER: The petitioner contends that it kept its books and filed its income tax returns on the accrual basis; that the Buffalo contract, which did not contemplate or require in excess of twelve months for

completion, was not a "long-term" contract as defined by the respondent's regulations, and that therefore the deduction of $61,031.40 taken in its 1937 return as a reserve for loss should be allowed in order to clearly reflect its income. The respondent contends that, since the petitioner has consistently reported its taxable income from contracts begun in one year and completed in the following year on the completed contract basis, and since the Buffalo project was not completed until 1938, the allowance of the deduction sought by the petitioner would result in a distortion of its taxable income for both 1937 and 1938.

The evidence shows that the first of the petitioner's contracts on which work was begun in one year and completed in the following year was in 1935. So far as disclosed, none of petitioner's contracts of that type covered a period in excess of twelve months from beginning until completion. The testimony of its secretary-treasurer, who had charge of its books, shows that under the petitioner's method of accounting for and reporting income from such contracts it was its practice to report the income received and the costs incurred with respect to specific projects in its return for the year of completion. Such a practice contradicts the petitioner's contention that it kept its books and filed its returns on the accrual basis. For as we said in *H. Stanley Bent*, 19 B. T. A. 181; affd., 56 Fed. (2d) 99:

* * * When, as here, the specific project accounts have been withheld from profit and loss until the completion of the project and this in disregard of any intervening annual period, it can not be said that the taxpayer's accounting method is one of the annual accrual of net income.

From the evidence it is apparent that the petitioner accounted for and reported its income by the completed contract method. So far as disclosed, the respondent has consistently accepted such method as correctly reflecting the petitioner's income and, we think, properly so. *H. Stanley Bent, supra; Alfred E. Badgley*, 21 B. T. A. 1055; affd., 59 Fed. (2d) 203; *Russell G. Finn, Executor*, 22 B. T. A. 799; *Fort Pitt Bridge Works*, 24 B. T. A. 626; affirmed on this point, 92 Fed. (2d) 825; certiorari denied, 303 U. S. 659; *D. L. Wheelock*, 10 B. T. A. 540.

With respect to the Buffalo project the petitioner, under the guise of a reserve for loss, seeks to depart from its established practice of accounting for and reporting income and to deduct in its 1937 return an amount representing a prorated portion of its total estimated loss on the project. Where, as here, the method of accounting employed by the taxpayer clearly reflects income, to permit such departure would not result in the petitioner's net income being computed "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer", as is required by the statute.

Sec. 41, Revenue Act of 1936. The allowance of such departure would, as respondent contends, result in a distortion of income for both 1937 and 1938. We are of the opinion that the action of the respondent with respect to this issue is correct, and it is therefore sustained. *Russell G. Finn, Executor, supra.*

The petitioner contends that the decisions in the *H. Stanley Bent, Alfred E. Badgley, Russell G. Finn, Executor,* and *Fort Pitt Bridge Works* cases, *supra,* cited by respondent, were predicated on article 36 of Regulations 45, relating to the 1918 Act, and did not specifically define "long-term contracts"; that article 42–4 of Regulations 94, relating to the 1936 Act, which is applicable here, defines "long-term contracts" as "building, installation, or construction contracts covering a period in excess of one year"; that the Buffalo contract did not cover a period in excess of one year and that to hold as applicable here the completed-contract method of reporting income involved in said decisions and specifically provided for in article 42–4 (b) of Regulations 94, would nullify the obvious intent of the regulation as disclosed in the definition of long term contracts. It is true that the decisions in the cases mentioned, except the *Badgley* case, involved taxable years controlled by the Revenue Act of 1918. However, the *D. L. Wheelock* case involved years controlled by the 1918 and 1921 Acts and the *Badgley* case involved years controlled by the Revenue Acts of 1921, 1924 and 1926. The regulations under all acts since the Act of 1918 contain the same definition of long term contracts as appears in article 42–4 of Regulations 94. The rule in the above mentioned cases is grounded not on the length of time covered by the contracts, but on the taxpayer's method of keeping books and reporting income, and, as we said in the *Bent* case, "The fact that some of the contracts were performed within a year and some took longer creates no inconsistency in the method and does not detract from a clear reflection of income." The petitioner has consistently reported the income from the various projects in the year in which the particular project was completed and there is nothing in the facts to indicate that such method consistently followed does not clearly reflect income, and certainly there is no justification for according the Buffalo project any different treatment from that accorded to other contracts begun in one year and completed the year after.

The petitioner has alleged that the respondent erred in disallowing the deduction of $7,537.35 taken as repairs to the dredge, Gala Water. The petitioner now concedes that $5,500 of the amount in question represented cost of raising the dredge and is not deductible. It is contended that the remaining amount of $2,066.19 is deductible because expended in reconditioning and restoring the hull and the

motor to the condition they were in prior to the time the dredge sank, citing *Zimmern* v. *Commissioner*, 28 Fed. (2d) 769.

Assuming, as petitioner contends, that $2,066.19 was expended for the purpose alleged, the *Zimmern* case is not authority for the allowance of the deduction claimed. In that case the taxpayer owned and was using in its business a coal barge which sank during a storm in 1918. The court held that an expenditure made by the taxpayer in 1920 for restoring the barge to the condition it was in at the time it sank was an ordinary and necessary expense and therefore deductible for the year in which made. The facts in the instant case are materially different. Here the petitioner purchased a dredge which had been lying on the bottom of Lake Erie for three months and was in an unusuable condition. It was for the dredge in that location and in that condition that the petitioner paid $200. Without further expenditures the dredge would have continued in the same location and in the same condition. Clearly what the petitioner had after making the expenditures here involved was not a sunken dredge in its then useless condition, but one that was afloat and serviceable. So far as disclosed, the expenditures made by the petitioner gave the dredge a useful life of many years beyond the taxable year. Under these circumstances we are unable to hold that the portion, now claimed, of the amount deducted by the petitioner constituted an allowable deduction. Cf. *H. Wilensky & Sons Co.*, 7 B. T. A. 693. The situation here presented is entirely different from that of a taxpayer who repairs damage which has occurred to property owned and being used by him and who after such repairs has no greater asset than he originally owned.

*Decision will be entered for the respondent.*