THE SAM W. EMERSON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86754. Filed March 12, 1962.

*Philip J. Wolf, Esq.*, and *Robert G. Skinner, Esq.*, for the petitioner.

*Clarence C. Roby, Esq.*, for the respondent.

FAY, *Judge:* The respondent has determined deficiencies in petitioner's income tax for the taxable years 1955, 1956, and 1957 in the amounts of $98,413.60, $107,864.82, and $241,445.42, respectively. The only issue for decision in this proceeding is whether petitioner was entitled to use the completed-contract method of reporting its income from certain "cost plus a percentage of cost" construction contracts.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are incorporated herein by this reference.

The petitioner is a corporation organized under the laws of the State of Ohio. Since its incorporation in 1912 it has been engaged in the general contracting business in Ohio. Its Federal income tax returns for the periods here involved were filed with the district director of internal revenue, Cleveland, Ohio.

Petitioner has on many occasions throughout the period from the date of its organization to the present time entered into and performed long-term construction contracts, that is, building, installation, or construction contracts which either covered a period in excess of 1 year from the date of execution to the date of completion and acceptance, or covered a period which, from the date of execution to the date of completion and acceptance, extended beyond the end of the taxable year within which the contract was executed. The long-term contracts were of various types, including "lump-sum," "unit price," "cost plus a percentage of cost with a guaranteed maximum," "cost plus a fixed fee," and "cost plus a percentage of cost" contracts.

During the years 1955, 1956, and 1957 the petitioner was engaged in the performance, among others, of 14 "cost plus a percentage of cost" contracts, which hereinafter will be referred to as cost-plus contracts. The contracts called for the erection of completed structures and were indivisible in nature. All 14 of the cost-plus contracts covered a period in excess of 1 year from the date of execution to the date of completion and acceptance, or involved work which extended beyond the end of the taxable year in which the contract was executed, and for purposes of this proceeding contained the same general pro-

visions.[1] The agreement document usually provided, in part, that the contractor was to furnish all necessary labor and materials and that the owner would pay the contractor for the performance of the contract the cost as defined by the contract, plus a specified percentage of the cost. With regard to the manner of payment, the agreement provided as follows:

The Owner shall make payment on account of the Contract as follows: On or about the first day of each month, the Contractor and the Architect shall determine the approximate value of the work done during the previous month, and the Owner shall make payment to the Contractor on or before the eighth day of the month.

The Contractor shall, as soon as possible, deliver to the Architect an itemized statement, in duplicate, showing the total cost of the work performed during the preceding month, including percentages for Contractor's overhead and profit.

This itemized statement shall be accompanied by a duplicate of all payrolls and invoices for the preceding month. After certification of this statement by the Architect and after deducting payment provided for in the first paragraph of this Article, the balance due shall be paid to the Contractor promptly. Any overcharge in first of month payment over itemized statement shall be credited in the itemized statement of the following month.

Before final payment is made, upon completion of the work, the Contractor shall submit evidence satisfactory to the Owner that all payrolls, material bills, and other indebtedness have been paid.

The specifications provided that "The title of all work completed and in course of construction, and of all materials, on account of which any payment has been made, shall be in the Owner." The General Conditions of the Contract provided that, "No certificate issued nor payment made to the Contractor, nor partial or entire use or occupancy of the work by the Owner, shall be an acceptance of any work or materials not in accordance with this contract."

Under the contract the contractor was responsible for personal injury and property damage resulting from his work whether or not such liability was covered by insurance and was to replace work condemned by the architect as failing to conform to the contract. In the latter situation, however, the owner was given the right to receive an equitable reduction from the purchase price if it was deemed inexpedient to correct such work.

Of the 14 cost-plus contracts performed by petitioner during the taxable years involved herein only 3 required more than 2 years to complete.[2] Of the latter, two required less than 3 years and one less than 4½ years to complete.

During the period from 1920 to and including 1954, petitioner entered into and performed 35 other building, installation, and con-

---

[1] The construction contracts actually consisted of the following documents: The Agreement, the General Conditions of the Contract, and the Drawings and Specifications.

[2] These figures were based upon time which elapsed from commencement of the work to completion of the contract.

struction contracts of a cost-plus type which either covered a period in excess of 1 year from the date of execution to the date of completion and acceptance, or covered a period which extended beyond the end of the taxable year within which the contract was executed. Of the 35 cost-plus contracts performed by petitioner between 1920 and 1954, only 3 required more than 2 years to complete. The longest period required to complete a contract was slightly more than 3 years. Several of these contracts provided that no payment was to be made until the contract was completed.

In connection with all its long-term construction contracts (i.e., "lump-sum," "cost plus a percentage of cost with a guaranteed maximum," "unit price," "cost plus a fixed fee" and "cost plus a percentage of cost"), petitioner since 1920 has maintained its books and records with regard to, and reported its income from, all such contracts on the completed-contract method of accounting.

Except as respects the income derived from its long-term contracts, petitioner maintains its books and files its income tax returns on an accrual method of accounting.

The completed-contract method of accounting is an established and recognized method of reporting income from long-term cost-plus contracts.

OPINION.

The evidence shows and we have found as a fact that during each of the years 1955, 1956, 1957, and prior thereto, the petitioner had several uncompleted construction contracts which either covered a period in excess of 1 year from the date of execution to the date of completion and acceptance or covered a period which extended beyond the end of the taxable year in which the contract was executed. The respondent does not dispute the characterization of all such contracts as long-term contracts.

The provisions of the Internal Revenue Code of 1954 which are pertinent to this proceeding are sections 446 and 451.[3] In addition, under the authority conferred upon the respondent by the revenue Acts to make all necessary regulations for their proper enforcement, he has in section 1.451-3 of the regulations prescribed certain methods

---

[3] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

(a) GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

for computing the income of taxpayers engaged in contracting operations extending over a period involving more than 1 taxable year.[4]

The petitioner was, therefore, entitled under the statutes and regulations to report the income from its long-term construction contracts either upon the percentage-of-completion method or upon the completed-contract method, provided the method chosen clearly reflected income. The petitioner chose the latter method, and in its books and on its Federal income tax returns from 1920 through the calendar year 1957 petitioner has consistently treated and reported as income only the actual profits on all contracts completed within the taxable year.

The respondent has now made a determination that the petitioner's method of accounting insofar as it concerns cost-plus contracts is improper. The position of the respondent is that when the terms and nature of a contract are such that the income realized from the contract is assured and can be ascertained as work under the contract progresses, purportedly the situation in a cost-plus contract, the completed-contract method of accounting does not clearly reflect income.

The question that we must decide, therefore, is whether the use of the completed-contract method of accounting for income from cost-plus construction contracts clearly reflects income. In essence, the crux of the problem is the language "clearly reflects income," and while the revenue Acts do not define the phrase, it is evident that what method will or will not clearly reflect income must vary greatly from business to business and from factual situation to factual situation. *V. T. H. Bien*, 20 T.C. 49, 53 (1953).

Ordinarily, a method of accounting which is in accordance with generally accepted accounting principles will be regarded as clearly

---

[4] Sec. 1.451-3 Long-term contracts.

(a) *Definition.* The term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted.

(b) *Methods.* Income from long-term contracts (as defined in paragraph (a) of this section), determined in a manner consistent with the nature and terms of the contract, may be included in gross income in accordance with one of the following methods, provided such method clearly reflects income:

(1) *Percentage of completion method.* Gross income derived from long-term contracts may be reported according to the percentage of completion method. Under this method, the portion of the gross contract price which corresponds to the percentage of the entire contract which has been completed during the taxable year shall be included in gross income for such taxable year. There shall then be deducted all expenditures made during the taxable year in connection with the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable year for use in such contract. Certificates of architects or engineers showing the percentage of completion of each contract during the taxable year shall be available at the principal place of business of the taxpayer for inspection in connection with an examination of the income tax return.

(2) *Completed contract method.* Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion.

reflecting income for tax purposes if it is used consistently and if the taxpayer continues in existence. Sec. 1.446–1(a)(2), Income Tax Regs.; *Jud Plumbing & Heating, Inc.*, 5 T.C. 127, 134 (1945), affd. 153 F. 2d 681 (C.A. 5, 1946); *L. A. Wells Construction Co.*, 46 B.T.A. 302 (1942), affirmed per curiam 134 F. 2d 623 (C.A. 6, 1943), certiorari denied 319 U.S. 771 (1943); *R. G. Bent Co.*, 26 B.T.A. 1369 (1932), involving "flat contract price," "fixed fee with upset price," and "flat percentage" contracts; *Russell G. Finn et al.*, 22 B.T.A. 799 (1931), involving "lump-sum" and "cost plus a percentage of cost" contracts; *Alfred E. Badgley*, 21 B.T.A. 1055 (1931), affirmed per curiam 59 F. 2d 203 (C.A. 2, 1932), involving "cost plus a fixed fee" contracts.

After reviewing the expert testimony in this case and examining other authoritative materials, we are convinced, and accordingly have found as a fact, that the completed-contract method of accounting is a generally accepted method of reporting income from cost-plus contracts. Furthermore, the record in this case shows that the petitioner has consistently used this method since 1920 in reporting its income from long-term construction contracts, a key factor in the reporting of income regardless of the method or system of accounting employed. *Advertisers Exchange, Inc.*, 25 T.C. 1086, 1092 (1956), affirmed per curiam 240 F. 2d 958 (C.A. 2, 1957). Thus, the method of accounting used by petitioner, on its face at least, would seem to satisfy the dictates of section 1.446–1(a)(2) of the regulations and the cases noted above.

Respondent contends, however, that under the circumstances of this case this is not enough. He argues, in effect, that since the cost-plus contracts involved herein provided for periodic progress payments, which payments represented a reasonably accurate measure of the income earned during the periods covered by the payments, and inasmuch as the danger of subsequent loss of such income before completion of the contract was negligible, there no longer existed a basis for disregarding the annual accounting concept. The respondent does not contend nor is there any evidence in the record to indicate that the petitioner used the completed-contract method inconsistently or incorrectly or that its books were not kept honestly and accurately.

Since it is not within the province of courts to weigh and determine the relative merits of methods of accounting, *Brown* v. *Helvering*, 291 U.S. 193 (1934), we need only consider whether petitioner was justified in rejecting the annual accounting concept under the circumstances of this case. The record discloses that each of petitioner's cost-plus contracts was an integral indivisible unit. Furthermore, because petitioner was potentially liable under the contracts for acts of negligence resulting from its work or for incorrect performance, its overall actual profit was not definitely ascertainable until the con-

tract was completed and accepted. See *Bent* v. *Commissioner*, 56 F. 2d 99 (C.A. 9, 1932), affirming 19 B.T.A. 181 (1930). Under such circumstances we believe that petitioner had a reasonable basis for preferring the completed-contract method over an annual accounting method for its long-term cost-plus construction contracts.

In addition, considering that petitioner was at this same time also engaged in the performance of other types of long-term construction contracts, i.e., "lump-sum," "unit price," etc., and that most of petitioner's contracts required less than 2 years to perform, it is probable that the method of accounting employed consistently and uniformly by petitioner for its long-term contracts would over a period of time tend to produce less confusion and more clearly reflect income than the method suggested by respondent.

In light of the foregoing, we are convinced that petitioner's method of accounting clearly reflects its income.

Petitioner has conceded the correctness of respondent's determination with regard to the other adjustments set forth in the statutory notice.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, dissents.