The Lincoln Electric Company, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 357-69. Filed May 6, 1970.

---

*Henry C. Harvey* and *Wallace M. Wright*, for the petitioner.
*Larry L. Nameroff*, for the respondent.

OPINION

The sole issue before us is whether petitioner's inventories for income tax purposes should include an allocable share of incentive compensation (bonus) payment to production and production-oriented workers. The answer will depend on whether or not petitioner's method of accounting for the bonus payment clearly reflects income.

Both parties rely on section 446, I.R.C. 1954, which provides in part:

SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

The petitioner argues that its method of accounting for the bonus, i.e., deducting it in full in the year of payment and not including any portion in inventories, is an acceptable method of accounting which clearly reflects income and therefore cannot be changed by the Commissioner to another acceptable method. *Photo-Sonics, Inc.* v. *Commissioner*, 357 F. 2d 656 (C.A. 9, 1966), affirming 42 T.C. 926 (1964); *Fort Howard Paper Co.*, 49 T.C. 275, 286, 287 (1967). The Commissioner, however, argues that petitioner's method of accounting does not clearly reflect income and therefore the Commissioner is within his authority in changing the method. *Commissioner* v. *Hansen*, 360 U.S. 446 (1959). Further, he argues if a method of accounting does not so clearly reflect income, it is not binding on the Commissioner even if such method is in accord with generally accepted accounting principles. *Fort Howard Paper Co.*, *supra*.

With these introductory positions established, it is apparent that we must decide if petitioner's method of accounting clearly reflects income. We hold that it does not.

The Code, in section 471 and the regulations thereunder, makes specific reference to inventories. In section 1.471–2(a), Income Tax Regs., it is provided:

Sec. 1.471–2 Valuation of inventories.

(a) Section 471 provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

With respect to conformity to accounting practice, we find it unnecessary to resolve the technical issue of conformity to the best ac-

counting practice in the trade or business; accord with such practices is not sufficient; it is also necessary for the method of accounting to clearly reflect income. Here is where we disagree with petitioner. As with other issues, whether a method of accounting clearly reflects income is to be determined on the basis of the particular facts and circumstances of each case and that is the basis on which our decision herein rests. *Sam W. Emerson Co.*, 37 T.C. 1063 (1962) ; *Fort Howard Paper Co.*, *supra* at 284.

We have indulged in the foregoing discussion because the parties have dealt extensively with questions of accounting principles and generally accepted accounting practices and methods in their argument. We believe their argument in this respect is really beside the point and that the nub of this case is essentially whether payment of the bonus was a *discretionary* distribution of profits by the petitioner or whether the payment was an *obligatory* distribution. If it was merely discretionary, the petitioner's treatment was correct; if obligatory, the Commissioner's determination should not be disturbed.

Petitioner argues that the bonus was a discretionary distribution to employees of profits earned during the year. The bonus was not fixed by any formula, but rather by the board of directors in its discretion depending on the amount of estimated profit for the year.

We cannot agree with this argument. Although legally the employees might not be able to sustain an action to compel payment of the bonus, the bonus had in fact been paid consistently for 30 years. The fact of this sustained payment over the years, we think, results in at least an understanding between petitioner and its employees that they would receive a yearend bonus. Further, this past action tends to limit the discretion of the board of directors to discretion as to amount rather than discretion of whether or not to pay a bonus at all. As a factor in reaching our conclusion, though not a determinative one, we note that the first or almost first action of the board at its 1964 and 1965 fall meetings was the amount of the bonus. This decision was reached before any discussion of present and future operations, yearend dividends and other matters which petitioner contends the board considered before deciding on the payment of a bonus. The minutes of these meetings belie the course of action by the board contended for by petitioner.

Next petitioner argues that it would be inequitable and absurd to defer the bonus as a cost of yearend inventory because of the manner in which it is distributed. This method stems from the merit-rating system for the past 12 months ended October 31, and since petitioner's inventory completely turns over every 45 days, there is no inventory at yearend to which the bonus relates. We do not accept this argument.

Inventory turnover is a tool for comparison, measuring the relationship between cost of merchandise sold and merchandise inventory, in terms of days of sale. It is not a means for valuing inventory, but is useful in comparing one accounting period to another.

However, probably the most significant reason for including a portion of the bonus in yearend inventory stems from the reason the bonus exists at all. That reason is production. To say, as petitioner does, that the bonus is a form of profit sharing is an oversimplification. We think it is more correct to look behind the obvious and ascertain the true nature of the payment.

When the payment is so analyzed, it becomes apparent that it derives its existence from production. As stated in our Findings of Fact, an employee's share of the bonus is determined from his wages during the preceding 12 months ended October 31, and from his merit rating. With respect to wages, most production employees are on a piecework basis, i.e., their wages are in direct proportion to their production. The merit rating system measures a worker's performance on the job and thereby "[his] contribution to the company." A brief glance at the various factors used in the rating (as stated in our Findings of Fact) shows that they measure in large part how well the worker does his job, i.e., produces. Thus the entire bonus arrangement is tied to production. When this is combined with the uninterrupted 30-year payment of the bonus yielding at least an understanding between petitioner and its employees that a bonus will be forthcoming and with the fact that the bonus represents a reward for a year's effort from November 1 to October 31, we fail to see why a portion of it should not be reflected in yearend inventory representing that production on which either a bonus has been paid or to which one will be paid in the following December.

We think that such an inclusion of costs clearly reflects income on an annual basis and that petitioner's present system of accounting does not. The consistency of payment by petitioner and the basis for the bonus require an allocation of a portion of the bonus to yearend inventory so as to clearly reflect income. The bonus has become, by virtue of years of payment, a fixture in petitioner's operations. We fail to see why it should not be accrued and allocated as petitioner does with overtime and vacation pay and with payroll taxes. We think it can be safely said that at present the bonus represents a labor or labor-related cost of petitioner which should be accounted for as is done with other costs falling within this same category. Accordingly,

*Decision will be entered for the respondent.*