T.C. Memo. 2014-82

UNITED STATES TAX COURT

PETER J. CHAPMAN AND JULIA L. CHAPMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25672-12.                     Filed May 7, 2014.

<u>Christina M. Passard</u>, for petitioners.

<u>Melanie E. Senick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $160,760 deficiency in

petitioners' income tax and a $35,152 section 6662(a) accuracy-related penalty for

2010.[1]  After concessions by petitioners, the issues for decision are:

_____

[1]All section references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules of Practice and

(continued...)

[*2]   (1) whether petitioners are entitled to a $65,000 contract labor expense deduction for 2010.  We hold that they are;

(2) whether petitioners are entitled to a $139,165 interest expense deduction for 2010.  We hold that they are entitled to a reduced amount;

(3) whether petitioners are entitled to a $910,623 bad debt deduction for 2010.  We hold that they are not; and

(4) whether petitioners are liable for accuracy-related penalties under section 6662(a).  We hold that they are, but the penalties must be adjusted for consistency with this opinion.

FINDINGS OF FACT

Petitioners are a married couple who lived in Alaska when they filed their petition.  Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 2010.  In 2010 Mr. Chapman engaged in real estate maintenance services through a wholly owned LLC, Tundra Mountain Services, LLC (TMS), and real estate investment through another wholly owned LLC, Tundra Mountain Investment, LLC (TMI).  Mr. Chapman formed TMS in 2009 and TMI in 2006.  In

[1](...continued)
Procedure, unless otherwise indicated.

[*3] 2010 Mrs. Chapman was the sole shareholder of Alaska Inland Car Rental, Inc. (AICR), a subchapter S corporation.

Petitioners reported business income and expenses from "Tundra Mountain Enterprises" (encompassing TMI and TMS) on Schedules C, Profit or Loss From Business, of their 2007-09 returns under the cash basis accounting method. They reported the activity from TMS on Schedule C of their 2010 return under the cash basis method and reported the activity from TMI on Schedule C of their 2010 return under the accrual basis accounting method.

AICR and TMS were seasonal businesses with opposing busy seasons. TMS provided services including lawn care, snow removal, rekeying, general maintenance, winterizations, and plumbing repairs; the winter months were its busiest season. AICR provided car rental services and had its busiest season in the summer. TMS occasionally contracted with AICR for its employees to perform labor on TMS' behalf. In particular, the AICR employees performed "routine winterization" on properties that TMS had contracted to service or maintain. As payment for these services, TMS paid AICR $65,000 in 2010. TMS had no direct relationship with AICR's employees. Petitioners deducted TMS' payments to AICR on their 2010 Schedule C as part of TMS' contract labor expense.

**[*4]** Petitioners deducted $139,165 on their 2010 Schedule C as interest TMI paid to two classes of lenders: (1) credit card companies for credit accounts in the name of Bonnie Chapman, Mr. Chapman's mother; and (2) lenders who provided funds under 21 promissory notes. On TMI's behalf Mr. Chapman executed a document dated March 1, 2007, which stated that Bonnie Chapman assigned nine of her credit card accounts for TMI's use (assignment). The assignment document stated that the "transfer of credit lines is considered a loan by Bonnie Chapman to TMI for the net available credit of the items transferred" and that the "sum of account balances on the credit lines at the date of transfer will be repaid by TMI to the creditor on behalf of Bonnie Chapman and will be treated as an interest payment to Bonnie Chapman by TMI". Mr. Chapman was the only signatory to the assignment document.

Credit card statements and bank statements show the cashflow between the credit card accounts and TMI's bank account. Each credit card statement from the March 2007 billing cycle showed a balance transfer for approximately the amount shown on the assignment document.

TMI issued 21 promissory notes between December 14, 2006, and March 26, 2009. Each note had different terms regarding principal amounts, interest rates, and payment terms. Caitlyn Isch, Bonnie Chapman, and Gary Isch each held

[*5] one of the notes issued by TMI. TMI's 2010 bank statements show aggregate payments of $5,580 to Caitlyn Isch, $4,417.50 to Bonnie Chapman, and $1,800 to Gary Isch, respectively. TMI's 2010 bank statements do not reflect any payments to any of the lenders for the other 18 promissory notes.

Before 2010 TMI invested money in several real estate projects with Adam Rust and his limited liability company, Acuity Enterprises LLC (Acuity). As evidence of TMI's investment, Mr. Rust executed 12 promissory notes between August 30, 2006, and January 15, 2008. Ten of the notes had an annual interest rate of more than 40%. All of the notes provided that principal and interest would be due as a balloon payment at maturity. The parties earmarked all of the notes for specific real estate projects but did not secure the notes with any of the underlying real estate. Mr. Chapman would meet with contractors, real estate agents, and developers during the course of the development of each of the projects.

Mr. Rust filed a bankruptcy petition on October 21, 2010. The U.S. Bankruptcy Court for the District of Oregon discharged Mr. Rust's debts. Petitioners deducted principal and interest on their 2010 Schedule C because of Mr. Rust's bankruptcy discharge.

Respondent issued a notice of deficiency to petitioners in July 2012, reflecting his disallowance of petitioners' deductions for contract labor expenses,

**[*6]** interest expenses, and a bad debt. Additionally, respondent imposed an accuracy-related penalty. Petitioners timely petitioned this Court.

OPINION

## I. Burden of Proof

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any claimed deductions. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). To satisfy this burden, taxpayers must present sufficient records to substantiate their deductions. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976); Gorokhovsky v. Commissioner, T.C. Memo. 2012-206, aff'd, __ Fed. Appx. __, 2003 WL 5716541 (7th Cir. Oct. 22, 2013); sec. 1.6001-1, Income Tax Regs.

## II. Contract Labor Deduction

TMS contracted out labor to AICR employees in 2010, and TMS paid AICR $65,000 for the use of its employees. Petitioners deducted the $65,000 payment on their 2010 Schedule C as a contract labor expense.

**[*7]** Section 162(a) provides a deduction for certain ordinary and necessary business-related expenses. An expense is ordinary if it is normal, customary, or usual within the relevant business. See Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Welch v. Helvering, 290 U.S. 111, 113 (1933); see also sec. 1.162-7(a), Income Tax Regs.

The transaction at issue here is between Mr. Chapman's wholly owned LLC (TMS) and Mrs. Chapman's wholly owned corporation (AICR). Transactions between related parties warrant particular scrutiny for tax characterization. See United States v. Uneco, Inc. (In re Uneco), 532 F.2d 1204, 1207 (8th Cir. 1976); PepsiCo Puerto Rico, Inc. v. Commissioner, T.C. Memo. 2012-269. However, it is one thing to say that transactions between related parties should be carefully scrutinized and quite another to say that a genuine transaction should be disregarded for tax purposes simply because it occurred between related parties.

Respondent argues that petitioners failed to prove this $65,000 payment was an ordinary and necessary business expense. Respondent's argument is premised entirely on his assertions that neither AICR nor its employees provided any actual services to TMS. We do not agree.

**[*8]** Mr. Chapman testified that TMS is in the business of providing services such as lawn care, snow removal, rekeying, general maintenance, winterizations, and plumbing repairs. He also testified that the labor AICR provided included "routine winterizations" during AICR's slow season. We find Mr. Chapman's testimony credible. In addition, TMS' business required the labor reflected by this expense. Accordingly, we are convinced that TMS paid AICR $65,000 in exchange for its employees to perform TMS' services and that this expense was ordinary and necessary for TMS to carry out its business operations.

Respondent also argues that the $65,000 payment was in substance a contribution to capital. However, because the payment was compensation for services the AICR employees performed, we do not agree that this payment was a capital contribution.

Accordingly, petitioners have satisfied their burden of proving the $65,000 payment to AICR met the requirements for deductibility of a trade or business expense.

## III. Interest Expense Deduction

Section 163(a) allows a deduction for all interest paid or accrued on indebtedness within the taxable year. As an exception, section 163(h) generally disallows a deduction for personal interest. Petitioners claimed a deductible

**[\*9]** interest expense of $139,165 for 2010 as a result of two types of obligations: (1) interest Mr. Chapman purportedly paid on a number of credit lines in the name of Bonnie Chapman but "assigned" to TMI, and (2) interest accrued on notes TMI and Mr. Chapman issued.

A.  Assignment of Credit Lines

Under section 163(a), taxpayers may deduct interest expenses only if they arose from the taxpayers' own indebtedness; they cannot deduct interest expenses that arose from another's indebtedness.  Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), aff'g T.C. Memo. 1976-150.  In the absence of an obligation of the taxpayer to pay interest, the taxpayer is barred from deducting interest notwithstanding the taxpayer's characterization of payments as interest payments.  Motel Co. v. Commissioner, 340 F.2d 445, 447 (2d Cir. 1965), aff'g T.C. Memo. 1963-174.

Petitioners argue that TMI may deduct the interest paid on the credit lines Bonnie Chapman assigned to TMI under section 163(a).  To support their argument, petitioners provided a copy of the assignment document, the creditors' records showing balance transfers at the time of the assignment, and the creditors' records showing the payments towards interest in 2010.

[*10] Each of the credit card statements from 2008 (the assignment year) shows a balance transfer but does not show the origin or purpose of the balance transfer. Interest expenses and their underlying debt are allocated according to the use of the debt proceeds. See Robinson v. Commissioner, 119 T.C. 44, 70-72 (2002); sec. 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). Although petitioners assert that the balance transfers were a means of raising funds for Mr. Chapman's real estate investment business, petitioners failed to show the use of the debt proceeds for a business purpose. We note that the debt was incurred in the name of Mr. Chapman's mother, Bonnie Chapman. Mr. Chapman testified that he relied upon her credit in the business. However, his vague and general testimony does not provide a sufficient basis to trace the debt to business expenses. Accordingly, petitioners have failed to satisfy their burden of proving that the interest was properly allocable to their trade or business. In Robinson v. Commissioner, 119 T.C. at 70-72, we found that such a tracing regime is in conformity with the disallowance of interest expenses under section 163(h).

Additionally, petitioners provided a number of bank statements and credit card statements showing payments from TMI's bank account to a number of credit lines, including the credit lines covered by the assignment. Although the

[*11] statements show TMI made payments on the credit lines, the statements again fail to show the nature of the expenditures that generated the debt carried on the credit lines.

Because petitioners have failed to meet their burden of proving the interest payments were not Bonnie Chapman's personal obligation or that the underlying debt was an ordinary and necessary obligation of the business, petitioners are not entitled to an interest expense deduction for interest on the assigned credit lines.

B.  Promissory Notes

Whether a particular accounting method clearly reflects income is a factual question.  Sam W. Emerson Co. v. Commissioner, 37 T.C. 1063, 1067 (1962).  A taxpayer's labeling of his tax return as "accrual" is not determinative of the designation.  See Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 99 (1930).  Taxpayers may adopt any permissible method of accounting in connection with each separate and distinct trade or business, the income of which is reported for the first time.  Sec. 1.446-1(e)(1), Income Tax Regs.  Without the Commissioner's approval, a taxpayer must report income in accordance with the method of accounting the taxpayer used for previous years.  Sec. 446(e); FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 574-575 (2000); see also Shoong Inv. Co. v. Anglim, 45 F. Supp. 711 (N.D. Cal. 1942).

[*12] Mr. Chapman formed TMI in 2006. From 2006 to 2010 petitioners reported their TMI income and claimed deductions on their personal income tax returns. Petitioners changed their TMI accounting method in 2010 from the cash basis method to the accrual basis method. However, petitioners have not shown any reason TMI's items of income and deduction should be calculated under the accrual basis method. Although they were free to adopt the accrual basis method if it clearly reflected income, they had to do so for the first taxable year TMI was in operation, see sec. 1.446-1(e)(1), Income Tax Regs., or secure the consent of the Commissioner before changing methods, see sec. 1.446-1(e)(2), Income Tax Regs. Petitioners are not entitled to switch to the accrual basis method absent the Commissioner's approval.

Petitioners contend that the distinction between cash basis and accrual basis is insignificant because they actually paid their interest obligations under the notes as they came due in 2010. Petitioners have substantiated this claim only to a very limited extent. Petitioners provided evidence of TMI's interest payments on only 3 of the 21 promissory notes. For example, TMI's bank statements show that petitioners made payments totaling $11,797.50 to Bonnie Chapman, Gary Isch, and Caitlyn Isch in 2010. Petitioners have not shown that the interest on the remaining 18 notes was actually paid during 2010.

**[*13]** Petitioners assert that TMI's $11,797.50 interest payments were on debts incurred for nonpersonal purposes. See sec. 163(h)(1). Mr. Chapman credibly testified that the funds were used in TMI's real estate business. Accordingly, petitioners are entitled to an interest expense deduction for only the $11,797.50 they properly substantiated.

IV. Bad Debt Deduction

Petitioners contend that the promissory notes Mr. Rust issued constitute bona fide debts acquired in connection with a trade or business that became wholly worthless in 2010. Respondent contends that these debts are not bona fide debts, because they did not arise from a debtor-creditor relationship. We agree with respondent.

Section 166(a)(1) allows taxpayers to deduct bona fide business debts that have become wholly worthless within a taxable year. A bona fide debt arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable amount of money. Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs. A gift or contribution to capital may not be considered a debt for purposes of section 166. Sec. 1.166-1(c), Income Tax Regs.

**[\*14]** A contribution to capital in this instance would be in the form of a joint venture. A joint venture is "'an association of persons to carry out a single business enterprise for profit'". Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 848-849 (1957) (quoting 48 C.J.S. Joint Adventures, secs. 1 and 2) (citing Estate of Koen v. Commissioner, 14 T.C. 1406 (1950), and Osborn v. Commissioner, 22 B.T.A. 935, 945 (1931)); Gurtman v. Commissioner, T.C. Memo. 1975-96. Whether a joint venture was formed for tax purposes presents a question of fact. Gurtman v. Commissioner, T.C. Memo. 1975-96. The fundamental question is whether the parties intended to, and did in fact, join together for the accomplishment or conduct of an undertaking or enterprise. Luna v. Commissioner, 42 T.C. 1067, 1077 (1964).

There is sufficient evidence showing that Mr. Chapman and Mr. Rust intended to work together in a joint venture in real estate investment. The record establishes that the promissory notes formalizing the arrangement represented a capital investment by Mr. Chapman, with interest set at unusually high rates to account for Mr. Chapman's personal involvement in the projects. The "debt" was not secured by the real estate or any other collateral, and Mr. Chapman provided services on the projects. Mr. Chapman would meet with contractors, real estate agents, and developers. The evidence of the actual transfer to Mr. Rust of funds in

[*15] the amounts of the alleged notes is insufficient and the high level of risk and involvement by Mr. Chapman is indicative of a capital contribution to a joint venture, not a credit arrangement, in any event.

The notes were earmarked as investments in specific parcels of real property, but as stated previously, none of the notes was secured by any of the underlying properties. Mr. Rust defaulted on the principal payments as they came due under the notes.[2] Yet TMI allegedly provided additional funds to Mr. Rust.

Petitioners contend that the notes represent bona fide debt because the notes are binding obligations for fixed amounts and terms, but the terms meant nothing in practice. Petitioners further argue that the interest they received from Mr. Rust in previous tax years is evidence of a debtor-creditor relationship. However, the alleged interest payments do not prove a debt existed, because, among other reasons, the payments were not consistent and regular. These payments could well have been for services or return on investment.

In summary, although the notes had stated terms, the evidence indicates petitioners did not enforce payment at maturity. The interest rates were well above market levels. Mr. Chapman maintained an active role in the development of the

---

[2]The first note in the series is dated August 30, 2006, with a term of 12 months. Acuity issued an additional four notes for a stated aggregate sum of $104,230 after the first note matured.

[*16] projects. The record establishes that the parties intended the notes to act both as an investment and as compensation for Mr. Chapman's personal involvement in the projects.

On the basis of the foregoing, we hold the notes do not support a bad debt deduction for 2010.

V.  Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes an accuracy-related penalty if any part of an underpayment of tax resulted from a substantial understatement of income tax.  The penalty is 20% of the portion of the underpayment to which the section applies.  Sec. 6662(a).

The Commissioner bears the burden of production on the liability for an accuracy-related penalty in that he must come forward with sufficient evidence indicating that it is proper to impose the penalty.  See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause and good faith.  Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent meets his burden of production by showing that petitioners' understatement of income tax is "substantial".  Bronstein v. Commissioner, 138

**[\*17]** T.C. 382, 388 (2012). Individuals substantially understate their income tax when their understatement exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Petitioners bear the burden of proving that the accuracy-related penalty is inappropriate because of reasonable cause and good faith. See sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and good faith is determined by the pertinent facts and circumstances. Brunsman v. Commissioner, T.C. Memo. 2003-291; sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners have failed to provide evidence of their reasonable cause or good faith. Accordingly, if the Rule 155 computation demonstrates that petitioners' understatement exceeds the threshold, the 20% penalty will apply.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.