Koebig & Koebig, Inc. v. Commissioner.
Koebig & Koebig, Inc. v. Commissioner
Docket No. 719-62.
United States Tax Court
T.C. Memo 1964-32; 1964 Tax Ct. Memo LEXIS 302; 23 T.C.M. (CCH) 170; T.C.M. (RIA) 64032; February 12, 1964
*302 In 1951, respondent made a ruling that because of the nature of petitioner's business, petitioner could not use any long-term contract method of accounting and computing taxable income. In 1953, petitioner adopted an accrual method of accounting and computing taxable income and it consistently prepared under the same method its returns for each of the years 1953 through 1961. Respondent did not question any of these returns up to the 1959 return, or the right of petitioner to use such accrual method although it was apparent from each return beginning in 1953 that a billings method under which some expenses are deferred was not used. Upon the facts, it is held: The accrual method used by petitioner is an authorized method which clearly reflects petitioner's income; the use thereof in 1959 did not result in any distortion of income; petitioner was entitled to use its accrual method in computing income for 1959, and was entitled under that method to deduct all of its expenses actually incurred in 1959; the prior consent of respondent to use an authorized accrual method in 1953 was not required; and respondent's determination disallowing deduction of certain expenses was in error. Stanley *303 C. Lagerlof, 500 S. Virgil Ave., Los Angeles, Calif., for the petitioner. David R. Brennan, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined income tax deficiencies for 1956, 1957, and 1959 in the respective amounts of $16,408.14, $102,385.87, and $63,844.86, or a total amount of $182,638.87. He disallowed for 1959 a deduction of accrued contract expenses in the amount of $382,590.54. This determination eliminated the net operating loss of $249,235.04, reported in the return for 1969, and loss carry-backs to 1956 and 1957, thereby resulting in the determination of the deficiencies for 1956 and 1957. The basic issue relates to 1959. The ultimate question is whether, notwithstanding the facts that each of petitioner's returns for the years 1953 to the present time was prepared and filed on the same accrual method of accounting and reporting income and were accepted by respondent without question, respondent may compute petitioner's income for 1959 under the so-called billings method which petitioner contends was used only as an interim measure in preparing its 1952 return. A related question is whether respondent's consent *304 was required for the adoption in 1953 of an accrual method of accounting and reporting income. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. The returns for the taxable years were filed with the district director of internal revenue at Los Angeles, California. Petitioner, a California corporation organized on May 18, 1948, having its principal office in Los Angeles, has conducted at all times a business activity consisting of the performance of architectural and engineering services, usually pursuant to contracts. It describes its business as that of consulting engineers. Petitioner has never engaged in any actual construction, building, or installation activities. Many of the contracts require the rendition of services for periods in excess of one year, and have been entered into with governmental bodies and agencies such as, for example, the United States Department of Defense, the State of California, and the County and the City of Los Angeles. The contracts generally provided and specified the times at which petitioner could submit bills to the other party for services rendered, and also provided that the payments of the bills *305 could be made by the other party only at certain times and from special funds. The governmental or public bodies involved in these contracts legally could not and did not make any payments to petitioner for its services except at the times and in the manner specified in a contract. During and for the calendar years 1948 through 1951, petitioner prepared its returns and reported its income on the completed contract method of accounting, i.e., by including for the purposes of determining taxable income the income and expenses attributable to a contract only in the year of the completion of the contract. On March 8, 1951, petitioner submitted to respondent an application for permission to change its method of accounting from the completed contract method to the percentage of completion method beginning with the year 1951. For the purpose of properly considering the petitioner's request, respondent, under a letter dated March 22, 1951, asked petitioner to state whether its contracts were building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. *306 Petitioner advised respondent on April 4, 1951, about the nature of its business, that it did not do the actual construction of the projects which it designed, and that its request was to report its income for each calendar year on the basis of the actual percentage of the work which had been performed by Koebig & Koebig at the close of its taxable year. By letter dated May 21, 1951, respondent denied petitioner's application for permission to report income on the percentage of completion basis. Moreover, the respondent advised petitioner that in view of the nature of its business activities it was not entitled, under section 29.42-4 of Regulations 111 (under the 1939 Code), to report its income from contracts on either of such long-term contract methods of accounting, the completed contract method (which it was then using in reporting its income), or the percentage of completion method; and that it would be necessary for petitioner "to employ an authorized method of accounting in your computation of net income in accordance with the provisions of sections 29.41-2 and 29.41-3 of Regulations 111." [1] *307 *308 Petitioner requested an audit of its returns for 1949, 1950, and 1951 in a letter dated April 9, 1952, to the Los Angeles collector of internal revenue, in which petitioner stated inter alia that the request was made because the Commissioner or the Internal Revenue Department had "ruled that we must take up our profit on the basis of billings made on contracts receivable," and "due to changes in our accounting methods [we feel] that there will be certain adjustments made between the years mentioned above," and renegotiation of its defense contracts had been started. Revenue agent Victor Christensen began an audit in August 1952 of petitioner's books and returns for the years 1949, 1950, and 1951. He completed the audit in September 1952, but his final report was dated April 22, 1953. The agent's final report was sent to petitioner with a letter dated April 29, 1953, signed by the then district director of internal revenue in Los Angeles, and was received about May 1, 1953. Ralph Dow, C.P.A., was petitioner's accountant prior to 1953. Dow and the agent discussed the problems involved in *309 petitioner's method of accounting and reporting income, and the agent discussed his findings, conclusions, and adjustments with Dow and A. H. Koebig, petitioner's president. Petitioner agreed to the agent's findings and adjustments in tax liability for 1949, 1950, and 1951, as shown in the agent's report. It is stipulated that as a result of the audit of the returns for these years, "net deficiencies were determined by using a different basis for the computation of taxable income, and the application of this different basis resulted in the net deficiencies reflected by the Form 870," "Waiver of Restrictions On Assessment And Collection of Deficiency In Tax And Acceptance Of Overassessment," which petitioner through its president executed on April 20, 1953. As the result of this audit, the agent made an adjustment in petitioner's net loss for 1949; determined an overassessment for 1950 of $8,939.13; and determined an income tax deficiency for 1951 of $46,646.11. The net deficiency for 1950 and 1951 was $37,706.98. Agent Christensen's report on his audit of the years 1949-1951, dated April 22, 1953, contains a preliminary statement, which in material part states as follows: The net *310 deficiency in income tax recommended herein results from a change in accounting methods. The method of reporting income was changed from a completed contract basis and percentage of completion contract basis to a method of actual billings as provided in the contracts. It is believed this method of reporting income more correctly reflects income as contemplated by the Regulations. * * * The findings were discussed with A. H. Koebig, President, and Ralph Dow, C.P.A., with enrollment card. Agreement form 870 was secured. The agent stated in his report, also, as explanation of "Income from Contracts", as follows: "Income is revised to reflect the actual billings made during the year in accordance with the terms of the contract. Taxpayer corporation was reporting income incorrectly on the completed as well as percentage of completion contract basis. The net effect of the adjustment is a reduction to work in process, an increase in uncompleted contracts, and an increase in sales." The "different basis", or method, used by agent Christensen in recomputing petitioner's taxable income for 1949-1951 was as follows, using a single contract for the example: The agent took the date of the last *311 billing to the client under a contract in the taxable year as a cutoff date. The amounts billed to the client under the contract during the taxable year were included in income for the year, whether or not petitioner had received payment of any or all of the amount billed during the year; but charges for fees under the contract (income) not billed to the client during the taxable year were not included in income. With respect to expenses incurred during the taxable year under the contract, and using the date of the last bill submitted to the client during the year as a cutoff date, expenses incurred under the contract prior to the cutoff date were treated as costs of operations and allowed as a deduction in the taxable year. Such expenses were regarded as "attributable" to the amount which had been billed in the taxable year (accrued income), and such expenses were included in the cost of operations for the year. On the other hand, expenses incurred under the contract during the taxable year but after the date of the last billing (cutoff date) were not allowed as expense deduction in the taxable year, but were treated as deferred expenses to be deducted in the year when the next billing *312 under the contract would be made. Such deferred expense was regarded as attributable to the charges for fees under the contract not yet billed and to be billed in the following year, or a later year. The agent in his report referred to the expenses incurred in the taxable year but deferred, as work-in-process and included the amount thereof in the figure for work-in-process. In making the adjustments and recomputation of income for the years 1949-1951, and, later, in the preparation of the return for 1952, the deferred expenses under the above-described method consisted principally of salary expenses which were paid soon after the accrual thereof. Agent Christensen used the "billings basis" method in recomputing the amount of petitioner's taxable income for each of the years 1949-1951. The recomputation of the amount of the taxable income was based on the actual bills for charges submitted by petitioner to its clients during each taxable year, which submissions of bills for charges were made as provided in the contracts. The following schedule shows the amounts, for the years 1949-1951, of gross income from contracts shown on petitioner's books and reported in its returns, computed *313 under the completed contract method of accounting which petitioner used in those years; and the agent's recomputation of such gross income for each year under the billings basis method: Gross Income
Gross Income
Increase or
Year
C. Contract Method
Bill'gs. Method
(Decrease)
1949
$ 7,116.24
$ 42,534.95
$35,418.71
1950
330,791.58
253,814.06
(76,530.81)
1951
396,915.97
431,247.31
34,331.34
The following schedule shows the contract expenses computed by petitioner, shown on its books, and deducted in its returns for each year 1949-1951 under the completed contract accounting method it employed in those years; and the agent's recomputation of the amounts of such expenses as deductible expense for each year under the billings basis method: Expenses
Expenses
Increase or
Year
C. Contract Method [1]
Bill'gs. Method
(Decrease)
1949
$ 24,624.78
$ 44,451.41
$ 19,826.63 [2] *314 1950
230,193.36
178,060.62 [3]
(52,132.74)
1951
303,066.23
311,679.77 [4]
8,613.54 The above-described billings basis method was developed by Dow and Christensen when the latter made the audit of the returns for 1949-1951. Dow changed and adjusted certain figures on petitioner's books and made adjustments on the books to agree with Christensen's audit of the above years and use of the billings basis method. Dow prepared the return for 1952 and he did so on the same billings basis method. The return for 1952 was signed by Dow and officers of petitioner on February 27, 1953, and filed on March 2, 1953, which was before the date of Christensen's final report on his audit of the 1949-1951 returns, which is dated April 22, 1953, and was before that report was approved by the *315 Internal Revenue Service and received by petitioner on May 1, 1953. The record in this case does not explain the lapse of time between the time when Christensen completed his audit on September 11, 1952, and the date of his final report, April 22, 1953, other than that the agent made some arithmetical errors and there was the customary review of his report for approval in the Internal Revenue Service. Dow attached an explanation to the 1952 return referring to Christensen's examination of the prior years and the absence, as of the time the 1952 return was prepared and filed, of a final determination with respect to the years 1949-1951 under the agent's audit. In preparing the 1952 return, Dow computed under the billings basis method the amounts of income from contracts to be accrued in 1952; he used $110,322.67 (see above schedule) as the amount of work-in-process at the beginning of 1952; the amount, $7,737.68 as work-in-process at the end of 1952; he computed the amount of contract expenses under the billings method to be deducted in 1952; and certain expenses were deferred. The billings method is a hybrid not accrual accounting method. In 1953, after preparing the 1952 return, Dow *316 retired, and petitioner was obliged for that reason to employ a new accountant in 1953. There was not any other or ulterior purpose in engaging a new accountant. Petitioner employed the firm of Mattison, Thomas, & Lockett, certified public accountants in Los Angeles. As far as the record shows, this firm still performs accounting services for petitioner. Petitioner's returns for the years 1953 through 1961 were prepared by this firm under the supervision of one of the members of the firm. All of the returns were prepared under a standard accrual method of accounting. A member of the Mattison, Thomas & Lockett firm who was in charge of the account of Koebig & Koebig, Inc., was F. C. Thomas, and it was necessary for him to become acquainted in 1953 with the books, accounting procedures, accounting problems, and matters involved in the preparation of the return of Koebig & Koebig for 1953. In his discussions with the principals in the Koebig corporation, he learned of their need (because of an existing stock option agreement which is not at all involved in this case) to have the books of the Koebig corporation at all times reflect the true net worth of the corporation, particularly at *317 the year end. This particular need did not have any tax aspects or relation to the method of reporting the corporation's taxable income but, rather, represented an internal problem or concern of the corporation. The principals of the corporation consulted Thomas about the possibility and permissibility of keeping the books on a percentage of completion basis so that the books would reflect the true net worth of the corporation at all times and thereby facilitate the management's considerations of its internal matter requiring knowledge of the true book value of the corporation's stock at all times. In other words, the principals in the Koebig corporation had a problem relating to determining the book value of the corporation's stock which involved the method to be used in keeping the corporation's books but did not have any tax aspects which are material in this case. In his consideration of the above matter and inquiries by the principals of Koebig & Koebig, Thomas became acquainted with the ruling of the Commissioner under the letter dated May 21, 1951, referred to above, which had advised petitioner that it was not entitled to report its income from contracts under either the completed *318 contract method or the percentage of completion method, and that it would be necessary for petitioner "to employ an authorized method of accounting in [its] your computation of net income in accordance with the provisions of section 29.41-2 and 29.41-3 of Regulations 111." Thomas also learned about the audit of and adjustments made by agent Christensen with respect to the returns for 1949-1951; about how the 1952 return was prepared by Dow; and about the so-called billings basis method of computing petitioner's taxable income. The so-called billings basis method was unfamiliar to him. In the early part of 1954, Thomas and his assistants started preparations for making up petitioner's return for 1953. Having in mind the Commissioner's letter ruling of May 21, 1951, he concluded that the only authorized accounting method which petitioner could use was an accrual method of accounting, and he used an accrual method of accounting in preparing petitioner's return for 1953 and the same accrual method for subsequent years through 1961. But he encountered the problem of whether any expenses could be deferred under an accrual method for the purpose of computing petitioner's taxable income. It *319 was his understanding of the Commissioner's regulations that a taxpayer such as petitioner could not defer expenses unless it adopted a method of accounting prescribed in the regulations for long-term contracts; i.e., either the completed contract method of accounting or the percentage of completion method. Since the Commissioner in his ruling of May 21, 1951, had denied petitioner the use of either method, Thomas concluded that, in the instance of Koebig & Koebig, a service business, and in view of the nature of its business and of its expenses, there was no method of accounting prescribed in the regulations under which petitioner could defer any expenses to a later year which had been incurred in a taxable year. He concluded, therefore, that for petitioner to comply with the ruling of May 21, 1951, no expenses should be deferred and all expenses incurred in a taxable year should be deducted in that taxable year. He observed, moreover, that the regulations provide that expenses are deductible in the taxable period in which they are incurred. On the basis of the understanding of Thomas, above described, in petitioner's return for 1953 and in all subsequent returns, all expenses actually *320 incurred in the taxable year were deducted in that year, and none was deferred to a later year. The deduction of all the expenses actually incurred in the taxable year differed from and was contrary to the computation of the amount of expenses which had been deducted in the 1952 return prepared by Dow, who had used as a cutoff date the last date of billings in the year, deducted only expenses incurred up to the cutoff date under each contract, and had deferred expenses incurred in the year after the billing dates, - the so-called billings basis method. On the other hand, in the 1953 return and in the returns for all of the subsequent years, the amount of income from contracts which was included in gross income was the total amount billed to clients during the year, whether or not payment was received by petitioner in the taxable year, which treatment was the same as was followed in the 1952 return. However, this represented an accrual method because of the terms of the contracts. With respect to the matter of deducting all of the actual expenses incurred in a taxable year and of not deferring any of such expenses, as was done in the return for 1953 and the return for each subsequent *321 year, petitioner did not ask for or receive the express consent of the Commissioner. However, the Commissioner accepted without question the 1953 return and all of the subsequent returns filed, until he made the determination in auditing the 1959 return which is here in dispute. For example: Petitioner reported a loss for 1953. Respondent allowed petitioner, without any question, to carry back the loss to 1952, and he made a refund of $11,445.87. Petitioner in 1953 adopted for its internal corporate purposes the percentage of completion method for keeping its books but, according to the advice of its accountant, Thomas, it also adopted a customary accounting procedure of making year end adjustments which were used in preparing its returns so that it did not prepare its returns and report its income on a percentage of completion basis which had been proscribed by the May 21, 1951, ruling of the Commissioner; but, petitioner rather prepared its returns and reported its taxable income under the accrual method above described. Petitioner's books and accounting records in 1953 and thereafter, including 1959, were adequate for the computation of its taxable income and income tax on the accrual *322 method of accounting used in its returns for 1953 and for each subsequent year up to the present time. Petitioner reported a net operating loss in its return for 1959. Its application for a refund was the occasion for an audit by respondent of its 1959 return, which was extended to an audit of its returns for 1956, 1957, and 1958. The audits were made in 1960 or 1961 and resulted in the determinations of the deficiencies involved here. But prior to the audits in 1960 or 1961, respondent did not make any audit of any return of petitioner except the aforementioned audit requested by petitioner of its returns for 1949 through 1951. In 1954 petitioner filed a claim for refund of 1951 tax on the ground that the revenue agent had made a duplication of certain income in his audit of petitioner's return for 1951. In this instance, respondent's agent prepared a report under which he allowed the claim for refund. No other claim for refund, except for 1951 and 1959 has been made by petitioner. The principal adjuestment made by respondent, giving rise to this case, is his disallowance of $382,590.54, which is part of the amount deducted as expenses or costs of operation in petitioner's return *323 for 1959. Respondent's explanation in the statutory notice of deficiency is as follows: It is determined that the "billings basis" of accounting previously approved by the Commissioner in a report dated April 29, 1953, covering your taxable years 1949, 1950 and 1951, which method you accepted for Federal income tax purposes, requires the deferral at year-end of "costs of operations" commensurate with the deferral of income at year-end from uncompleted engineering contracts. Accordingly, income for 1959 is increased in the amount of $382,590.54 by reason of disallowance of costs of operations claimed in your 1959 return, which properly are deferrable as applicable to completed but unbilled portions of contracts and as computed in the attached Exhibit A. In reporting income for 1959 from its contracts, petitioner included in gross income, as accrued income, whether or not payment had been received, the amount of the fees for which petitioner was entitled to submit bills under contracts, and for which petitioner had submitted bills to its clients during 1959. To this method of reporting income, which is an accrual method, respondent did not object and did not make any adjustment in the *324 amount of gross income reported in the 1959 return. The determination made by the respondent for 1959 relates only to the computation of the amount of the expenses properly to be deducted in 1959. Respondent reduced the amount of expenses deducted for 1959 by $382,590.54, which amount he determined represented "deferred expenses" to be deducted in a subsequent year. In computing the above amount of expenses to be deferred, respondent used a different method than the billings method used by Christensen when he audited the 1949-1951 returns. For example: The agent who audited the 1959 return did not ascertain the amount of direct expenses actually incurred under each contract prior to the date of the last billing in 1959 under the contract. Rather, he adopted a short-cut percentage method of computing the respective amounts of incurred expenses to be accrued and deducted in 1959, and of incurred expenses to be deferred. There were on petitioner's books with respect to each contract in process, estimates of the percentage of completion of each contract at the end of 1959. The agent determined the relationship between each completion percentage and each billing percentage, and applied *325 the same ratio, or percentage, to the direct expenses incurred during 1959 to compute and determine the amount of 1959 expenses to be accrued under each contract and deducted in 1959. For example: If petitioner had estimated that 60 percent of its work under a contract had been completed at the end of 1959, and if it had billed the client during the year for 40 percent of its fees or the contract price, the ratio of billings to completion was 2 to 3, or in terms of a percentage, 66 2/3 percent. The agent applied 66 2/3 percent to the total direct expenses incurred under the contract in 1959, accrued that amount for 1959 as deductible expense, and deferred the remainder of the direct expenses. The aggregate sum of the items of direct 1959 expenses which the agent determined was to be deferred is $382,590.54. The above method of computing the repective amounts of deductible expenses and deferred expenses under contracts resembled the billings method only to the extent that both methods accrue some direct expenses in the year and defer the rest to a subsequent year. However, as applied to a given year, each method will produce a different amount for direct expenses to be accrued, and *326 a different amount for expenses to be deferred to a subsequent year. Respondent's 1959 method differed materially from his 1951 billings method. Ultimate Findings of Fact The respondent by his letter to petitioner of May 21, 1951, ruled that the petitioner could not use any long-term contract method of accounting. The billings method is a long-term contract method of accounting; also, it is a cash receipts and disbursements method, or an accrual method of accounting; it is a hybrid method of accounting. The filing by petitioner of its 1952 return on the method denominated as the "billings basis" did not in the circumstances constitute the adoption of a method of accounting and reporting income so as to require the respondent's consent to change to a different method, an accrual method, for 1953. Since the return for 1952 had to be filed prior to May 1, 1953, when petitioner received respondent's letter of April 29, 1953, advising it of the final report and results of his audit of the returns for 1949, 1950, and 1951, the only logical course that petitioner could follow pending receipt of the final notification was to file its 1952 return on the same basis that had been used by the *327 agent in auditing the returns for the 3 prior years; the filing of the 1952 return on the "billings basis", or method, was merely an interim procedure. Petitioner did not thereby intend to nor actually adopt the billings method as its permanent method of reporting income. All of the returns filed by petitioner for each year from 1953 through 1961 were prepared on the same accrual method of accounting. The return filed by petitioner for 1953 gave notice to the respondent by its details that the amount of the deduction for direct contract expenses incurred in 1953 had not been computed under the billings method, and, hence, taxable income had not been computed under the billings method. Each of the returns filed by petitioner for the years 1954 through 1961 gave notice to the respondent by its details that the amount of incurred contract expenses deducted and taxable income had not been computed under the billings method. The use of the accrual method of accounting and reporting income used by petitioner in the preparation of its return for 1953 did not result in the duplication of any deduction item taken in 1952 or in any prior year, or in the omission of any income item not reported *328 in 1952 or in some prior year. The use of the accrual method of accounting and reporting income used by petitioner in the preparation of its return for the year 1953 did not result in any distortion of its taxable income with respect to 1953 or any prior year. The use of the accrual method of accounting and reporting income used by petitioner in the preparation of its return for 1959 did not result in the duplication of any item of deduction taken in 1958 or in any prior year, or in the omission of any income not reported in 1958 or in some prior year. The use of the accrual method of accounting and reporting income used by petitioner in the preparation of its return for 1959 did not result in any distortion of petitioner's taxable income with respect to 1959 or any prior year. The accrual method of accounting and reporting income used by petitioner in the preparation of its returns for each of the years 1953 through 1961 clearly reflects the income of petitioner for each of those years. Each of petitioner's returns for the years 1953 through 1961 has been fairly and honestly prepared on the same accrual method of accounting. In none of the returns filed for those years did the petitioner *329 attempt to evade any tax. The billings method, used by Christensen in his audit of the 1949-1951 returns, differs substantially from the method used by respondent in determining his disallowance of deduction of part of petitioner's expenses for 1959. The billings method allows the deduction of all expenses directly attributable to the performance under a contract up to the date of the last billing during the year under the contract, and the deferment of the rest of the expenses incurred in the taxable year after the date of the last billing; whereas, the 1959 method used by respondent allows the deduction of all expenses directly attributable to the performance under a contract during the year in the same proportion that the percentage of the amount billed compared with the total contract price bears to the percentage of completion of the contract at the end of the year. The respondent's 1959 method therefore involved a change in the treatment of a material item from the treatment of such item under the billings method, namely, the deductibility of expenses directly attributable to the performance under a contract. Opinion The basic issue in this case relates only to petitioner's deduction *330 of part of its actual expenses, $382,590.54, incurred in a taxable year, 1959, under its contracts with clients. We are not concerned with the treatment of other expenses incurred in a taxable year which are not directly related to the performance of any specific contract, which are without question deductible in the year in which incurred. Stated briefly, the dispute arises out of conflicting views of the parties about whether petitioner in 1959 was required to defer and postpone the deduction of some of the actual expenses incurred in 1959, which were directly related to contracts (or jobs) in progress, to a later year, in order to obtain a rather precise matching of the income and expenses of the year, such expenses being related to work under contracts for which the clients were not billed during the taxable year. The questions which must be decided to dispose of the issue are discussed hereinafter. It is observed at the outset that petitioner has consistently used the same accrual method of reporting its income since 1953. The return for 1953 and for each succeeding year was prepared and taxable income was reported under the same accrual method. The only return involved in this *331 case is the return for the taxable year 1959; 1959 is not a year in which the taxpayer made a change in its method of accounting and reporting income. The accrual method used in reporting income for 1959 did not result in any distortion of income because it is the same method of accrual accounting which petitioner has used consistently since 1953. Moreover, in none of the returns filed for the years 1953 through 1961 did petitioner attempt to evade any tax; and each of the returns for the years 1953 through 1961 has been fairly and honestly prepared on the same accrual method of accounting. In addition, no serious suggestion has been made by the respondent that the accrual method used by petitioner consistently from 1953 to the present time does not clearly reflect income. Respondent's arguments have been carefully considered. Upon the entire record, it is concluded that respondent erred in his determination disallowing deductions of direct contract expenses actually incurred in 1959 in the amount of $382,590.54. The first questions considered are whether petitioner adopted a method of accounting and reporting income called the "billings basis" in filing its return for 1952 under that *332 method; [2] and whether petitioner was required to obtain the consent of the Commissioner to use the accrual method of reporting income which was used in the preparation of its 1953 return. Petitioner's return for 1952 necessarily was filed prior to its receipt of the Commissioner's letter of April 29, 1953, advising it as to the final disposition of his audit of the returns for 1949, 1950, and 1951. In the circumstances, *333 the only logical thing that petitioner could do, pending receipt of such final notification, was to prepare and file its 1952 return under the same billings method of accounting and reporting income that had been used by agent Christensen in auditing the returns for the 3 prior years. It is concluded that the filing of the 1952 return under the billings method was a mere interim measure, and that petitioner did not thereby intend to adopt and did not adopt that method as its permanent method of accounting and reporting income. We do not agree with respondent that in 1952 petitioner maintained its books under the billings method pursuant to an agreement with respondent. The evidence does not support that contention. The circumstances were that agent Christensen did not start auditing the returns for 1949-1951 until August 1952 and there is no evidence that petitioner entered into an agreement with respondent to maintain its books and report income under the billings method. It is our view that the single use of the billings method in preparing the return for 1952 was merely an interim measure which should not be held to constitute the adoption of a method of accounting and of reporting *334 income so that the prior consent of respondent was an absolute prerequisite to what followed in 1953. Petitioner required time to assimilate respondent's final report on the audit. Petitioner promptly studied its problem with its new and competent accountants and adopted in 1953 an accrual method of accounting and reporting income which complied, as far as the record here shows, with the directives and advice given petitioner by the Commissioner in his letter ruling of May 21, 1951. In filing its next return, the return for 1953, petitioner did adopt an accrual method and thereafter consistently adhered to the same method. In the circumstances, respondent's prior consent was not required in order to adopt and accrual method in 1953. In denying petitioner's request to change from the completed contract method to a percentage of completion of contract method, the Commissioner on May 21, 1951, disapproved of the use of either long-term method and directed petitioner to adopt an "authorized" method. That letter plainly constituted a ruling, which not having been modified or revoked remained in effect, and could neither be set aside by agent Christensen nor ignored by petitioner. In using *335 for its 1952 return the so-called billings method employed by agent Christensen in computing the net deficiency assessed for the years 1949, 1950, and 1951, petitioner in effect used a variation of the two long-term contract methods expressly denied to it by the Commissioner. Accordingly, in its 1953 return, it was still incumbent upon petitioner to abandon such method and adopt and use one of the other authorized methods of accounting and reporting income. The other authorized methods available to petitioner under the 1939 Code were, of course, the cash receipts and disbursements method and an accrual method. Section 41, 1939 Code. In its 1953 return it adopted an accrual method and thereafter up to the present time petitioner has consistently adhered to that same method. Petitioner contends and we agree that the so-called billings method developed by agent Christensen and Dow was in fact nothing more and nothing less than a type of long-term contract method of the use of either long-term method and directed petitioner to adopt an "authorized" method. That letter plainly constituted a ruling, which not having been modified or revoked remained in effect, and could neither be set aside *336 by agent Christensen nor ignored by petitioner. In using for its 1952 return the so-called billings method employed by agent Christensen in computing the net deficiency assessed for the years 1949, 1950, and 1951, petitioner in effect used a variation of the two long-term contract methods expressly denied to it by the Commissioner. Accordingly, in its 1953 return, it was still incumbent upon petitioner to abandon such method and adopt and use one of the other authorized methods of accounting and reporting income. The other authorized methods available to petitioner under the 1939 Code were, of course, the cash receipts and disbursements method and an accrual method. Section 41, 1939 Code. In its 1953 return it adopted an accrual method and thereafter up to the present time petitioner has consistently adhered to that same method. Petitioner contends and we agree that the so-called billings method developed by agent Christensen and Dow was in fact nothing more and nothing less than a type of long-term contract method tailored along the lines of the completed contract and percentage of completion methods denied to the petitioner. Like those two long-term contract methods (and unlike the *337 cash or standard accrual methods), the billings method had as its prime objective the precise matching of expenses with income, which agent Christensen testified was his objective. Further, it was like the completed contract method in that it utilized the principle of deferring certain direct expenses to a subsequent year, although, of course, it applied the principle to defer only a portion of the direct expenses. Moreover, it was somewhat similar to the completed contract method in that, in theory at least, it excluded from taxable income those fees for services which could have been but which were not actually billed. The completed contract method defers all income whether billed or not, and whether billable or not, until the time of completion of services under the contract. The deferral of income was not a significant factor in the development of the billings method in that the petitioner at all times sought to bill its services when it had the contractual right to do so, thus in fact giving the same amount of gross income under either the billings method or an accrual method. Judging from the significant features of the billings method, the approach taken by agent Christensen *338 and Dow in developing the so-called billings method was to retain the basic objective of the long-term contract methods, which is to match income precisely with expenses, but (1) to avoid the complete deferral of all income and of all expenses directly related to the performance of services under specific contracts, as had been done by petitioner under its prior completed contract method of accounting and reporting income; and (2) to avoid the accrual of any income from services which was not billable, such as would have been done under the percentage of completion method of accounting and reporting income, which method petitioner had requested permission to change over to and adopt. They thus arrived at the hybrid "billings basis", or billings method. Under that method (a) all services actually billed are included in gross income, and therefore unbilled but billable income, if any, is deferred to a subsequent year; (b) all expenses directly related to the performance of services under each contract actually billed are deductible up to the date of the last billing thereunder, and all other such expenses incurred thereafter are deferred to a subsequent year; and (c) all other expenses *339 actually incurred are deductible. Under that approach the critical date for purposes of determining taxable gross income and expenses deductible therefrom is the date of last billing under each contract. Hence, by making only partial use of completed contract principles, the so-called "billings basis", or billings method, is in its effect much like the percentage of completion method. The latter method, of course, uses actual expenses incurred to the end of the tax year and total estimated expenditures under the contract, including those already incurred, as the operative factors for determining somewhat arbitrarily reportable income related thereto; whereas, the so-called "billings basis", or method, uses the date of actual billings as the operative factor for determining somewhat arbitrarily the deductible expenses related to the services billed. Each approach (percentage of completion method and billings method) uses a point in time as the cut-off date. Under each approach there is a somewhat arbitrarily developed correlation between expenses and income in order to match one with the other and to minimize the possibilities of inequities to the revenue and to the taxpayer which could *340 arise because of the long-term nature of the contracts involved. We agree with petitioner that the billings method is merely another long-term contract method of accounting, appropriately characterized by agent Christensen in his testimony as a "hybrid method of accounting", which method plainly is designed to serve precisely the same purpose as the two long-term contract methods from which it so obviously acquired its basic and essential characteristics. Had the Commissioner been of the opinion that the petitioner was entitled to develop and use such long-term contract method of accounting as the billings method, he certainly would have advised the petitioner in his letter of May 21, 1951, as to the availability of some long-term contract method other than the two specified in the regulations for taxpayers in the building, installation, or construction business. Instead, the Commissioner directed petitioner to adopt an "authorized" method of accounting. In our opinion, in 1953, the petitioner did just that. Accordingly, the single, unauthorized, and interim use in 1952 of the so-called "billings basis", or method, at a time when the petitioner had not yet received the respondent's *341 final report of the audit of its returns for 1949, 1950, and 1951, received about May 1, 1953, was not a method "authorized" by the Commissioner or the 1939 Code. We believe, further, that in preparing the next return, for 1953, on an accrual basis, petitioner used a proper and authorized method of accounting and reporting income. According to our understanding, none of the 3 methods of accounting and reporting income referred to above qualifies as a standard system of accrual accounting, i.e., completed contract, percentage of completion of contract, and the so-called "billings basis." See H. H. Brown Co., 8 B.T.A. 112, where it is said that the basic idea under an accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred, and income definitely earned, without regard to whether payment has been made or whether payment is due. None of the above 3 methods adheres to those controlling principles, and each deviates substantially in its approach. Under both the 1939 and 1954 Codes, income actually earned (that is to say, in this case, income which is billable) must be accrued and cannot be deferred under an accrual method. See *342 Marquardt Corporation, 39 T.C. 443, 452-453 (appeal pending, C.A. 9). Also, any concept of deferring expenses actually incurred in a taxable year was alien to any authorized system of accounting under the 1939 Code. See Josef C. Patchen, 27 T.C. 592, 600, affirmed in part and reversed in part on other grounds, 258 F. 2d 544 (C.A. 5, 1958); Marquardt Corporation, supra, 452-453; section 1.446-1(c), Income Tax Regulations.In Josef C. Patchen, supra, (p. 600) this Court said (with respect to certain expenses which were held to be deductible in the taxable year, from which conclusion there was no appeal - see 258 F. 2d 544, 546 fn. 3): * * * There is no provision in the Code permitting the postponement by an accrual basis taxpayer of the deduction of expenses from one year to another in order to obtain a precise matching of income and expenses. It is noted that the taxpayer in Patchen was a consulting engineering firm which reported income on an accrual method. We believe it is clear that the so-called "billings basis" system (used by petitioner in its 1952 return) was in effect one which the Commissioner in his letter ruling of May 21, 1951, ruled petitioner could not use because *343 it is not an "authorized" accrual method; and that when petitioner prepared its 1953 return on a standard accrual method (which it did), petitioner only was slightly delayed in complying with the Commissioner's letter ruling, which as far as the record discloses, was still in effect. On the basis of the foregoing, it is concluded that no further consent of the Commissioner was required in order that petitioner could adopt the accrual method of accounting and reporting income which it adopted in 1953, on the basis of which it filed its 1953 return and the returns for the subsequent years, in view of the ruling of May 21, 1951. We believe that a factor which contributes to the present dispute is ambiguity or uncertainy about the status of that ruling and the relation to it of agent Christensen's audit of the returns for 1949-1951. But respondent has failed to demonstrate or present evidence that establishes that the May 21, 1951, ruling was not controlling, or on the other hand that the agent's report on his audit superseded the ruling. With respect to the element of doubt in this matter, we resolve the doubt in petitioner's favor. Another question is whether the accrual method used *344 by petitioner in 1959 resulted in any distortion of income. One of the obvious reasons for the regulation (section 24.41-2 of Regulations 111 under the 1939 Code; section 446(e), 1954 Code) requiring that a taxpayer must first secure the Commissioner's consent to changing his method of accounting and reporting income is to prevent distortions of income which might result in an adverse effect upon the revenues. See Wright Contracting Co., 36 T.C. 620, 633-634, affd. 316 F. 2d 249, certiorari denied - U.S. - (1963). In this case, the claimed failure of petitioner in 1953 to secure the respondent's consent, which respondent claims was required, had its consequences only with respect to the year 1953. The claimed failure to secure respondent's consent to use an accrual method in preparing petitioner's 1959 return did not produce any distortion of income with respect to the return for either 1959, 1958, 1957, or 1956, and had no connection whatever with the 1952 return. The 1959 return produced no distortion of income at all, for the accrual method used by petitioner clearly reflected its income, and that same accrual method had been used by petitioner consistently since and including *345 1953. Even as to the change in 1953, it is clear that no distortion in income could have occurred, for it was merely a matter whether deductions in the amount of $7,737.68 were to be taken in 1952 or 1953; they were taken in 1953; and there were neither omissions of income nor duplications of deductions. Petitioner had income of $36,615.13 in 1952, and a loss of $18,020 in 1953, and was permitted to carry that loss back to 1952, and received a refund of $11,445.87. Accordingly, we think it is clear that it made no real difference to the Government and did not result in any adverse effect upon the revenues whether petitioner took deductions in the amount of $7,737.68, in 1952 or in 1953. The refund exceeded the amount of the deductions. Petitioner is correct in pointing out that in this case the claimed failure of petitioner in 1953 to secure the claimed consent of the respondent, to the adoption of an accrual method in 1953 and the use thereof in preparing the 1953 return, could and did have its consequences only with respect to the year 1953; and that the use of the same accrual method in preparing the 1959 return did not in itself produce or result in any distortion of income at *346 all, with reference to any year. Respondent has not made any contention to the contrary, and he does not dispute what is stated above. Respondent does not make any claim or pretense that his determination with respect to petitioner's 1959 return is for the purpose of preventing any distortion of taxable income arising by reason of the change in methods; he does not make any comparison of the 1959 return with the 1952 return for the purpose of demonstrating some duplication of deductions or omission of income; nor does he make any such comparison between the return for 1959 and the return for 1958, or 1957, or 1956. Obviously, there was and is no distortion of taxable income because the same accrual method was used consistently in computing the taxable income of each year. Since the respondent's determination for 1959 does not have as its purpose or effect the prevention of any actual distortion of income, we are unable to find a sound reason for respondent's contentions, or a reasonable and sufficient basis for redetermining petitioner's taxable income for 1959. It has been held above that no further consent other than the respondent's ruling of May 21, 1951, was required for petitioner *347 to file its 1953 return on an accrual basis; that the use of the same accrual method in 1959 did not result in any distortion of income; and that the use of the same accrual method in 1953 did not result in any distortion of income. There remains the question whether the use of that accrual method clearly reflected petitioner's income. There has been no contention by the respondent that petitioner's books were maintained in such manner during the years 1953 up to the present time that the books were not adequate for the computation of its taxable income for the years 1953 up to the present date, under the accrual method which was adopted in 1953 for reporting income. Petitioner's books were maintained adequately for that purpose and it is immaterial that those books also reflected petitioner's income on a percentage of completion of contracts method for internal corporate purposes. See Patchen v. Commissioner, supra, p. 550. Respondent has not made any serious suggestion that under petitioner's accrual method, consistently used since 1953, petitioner's taxable income was not clearly reflected, or made any suggestion that petitioner has used that method inconsistently. Upon the whole *348 record, it must be concluded that the accrual method which petitioner has used consistently since 1953, for reporting its income, does and did clearly reflect its income. See 2 Mertens Law of Federal Income Taxation (1961 Revision) Ch. 12, page 21, par. 12.05(a), where the basic and controlling principle is well stated. Also, it is clear and the record shows that the accrual method used by petitioner in reporting its income since 1953 is in accordance with generally accepted accounting principles applicable to an accrual method; and there is no doubt that since 1953, petitioner has consistently reported its income under the same method fairly and honestly, and without any attempt to evade taxation. The fact that an accrual method of reporting income does not always give a precise matching of income and expenses does not mean that it does not clearly reflect the income of petitioner; the vital point is consistency. Since petitioner's books and accrual method of reporting income clearly reflected its income, the respondent is not empowered to reconstruct petitioner's income on some other system to secure more favorable tax results. Patchen v. Commissioner, supra, p. 550; Sam W. Emerson Co., 37 T.C. 1063, 1067-1069; *349 Foster Wheeler Corporation, 20 T.C. 15, 19; Marquardt Corporation, supra, p. 452-453. It is immaterial that the method used by the respondent in recomputing petitioner's taxable income for 1959 (which is a modification of the so-called billings method devised by agent Christensen) would also clearly reflect petitioner's income or would result in a more precise matching of income with expenses. It is not within the province of the courts to weigh and determine the relative merits of methods of accounting, Brown v. Helvering, 291 U.S. 193; Sam W. Emerson, supra, p. 1068. In view of the above conclusions, it is unnecessary to consider other contentions of the parties; all of them and all authorities cited have been considered and certain matters tentatively indicated by the Court at the trial have been reconsidered in the light of the entire record. Respondent erred in his determinations for 1959 and the related years of 1956 and 1957. It follows that there are no deficiencies. Decision will be entered for the petitioner. Footnotes
1. Respondent's letter of May 21, 1951, to petitioner states in part as follows: Section 29.42-4 of Regulations 111, relating to the income tax, provides that taxpayers whose income is derived in whole or in part from long-term contracts may, as to such income, prepare their returns upon either the percentage of completion basis or the completed contract basis. This section defines "long-term contracts" as building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. Since none of your work is for the actual construction of the projects which you design, it is apparent that your contracts do not involve "building, installation, or construction" as required in the above-mentioned section of the income tax regulations. Accordingly, you are not entitled to report your income from contracts on either the percentage of completion basis or the completed contract basis and your request for permission to change to the percentage of completion basis is denied. Inasmuch as the completed contract basis which you presently employ is not applicable to your case, it will be necessary for you to employ an authorized method of accounting in your computation of net income in accordance with the provisions of section 29.41-2 and 29.41-3 of Regulations 111.
1. Expenses were computed by petitioner using closing inventories as of December 31 of $52,570.99 for 1949, zero for 1950, and $75,956.14 for 1951. ↩
2. Work-in-process as of Dec. 31, 1949, was reduced from $52,570.99 to the amount of expenses incurred after the date of the last billings, $32,744.36, or a reduction of $19,826.63. 3. The following were determined: ↩
Opening work-in-process
$ 32,744.36
Closing work-in-process
(42,980.07)
1950 job costs
188,296.33
1950 deductible expenses
$178,060.62
4. The following were determined: Opening work-in-process, Jan. 1, 1951
$ 42,980.07
Closing work-in-process, Dec. 31, 1951
(110,322.67)
1951 job costs
379,022.37
1951 deductible expenses
$311,679.77
Closing work-in-process represents expenses incurred under contracts in taxable year after dates of last billings in the year.↩
2. Petitioner in its briefs refers to a method used by agent Christensen in adjusting deductible expenses and determining petitioner's taxable net income for the years 1949-1951 as the "billings basis" rather than the "billings method". It appears that petitioner's view is that there is not a standard method of accounting and reporting income called the "billings method", and that accountant Dow and agent Christensen devised a means of computing taxable income and determining what expenses were deductible for 1949-1951 on a "billings basis." However, recognizing petitioner's view about this matter and without prejudice to petitioner's position, it is preferable as a matter of form to substitute herein the term "billings method" for "billings basis"; and that has been done.↩