AUBURN PACKING CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7347-70. Filed August 27, 1973.

*Merle D. Cohn,* for the petitioner.
*Thomas N. Tomashek,* for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax in the amount of $210,272 for the taxable year ended June 30, 1967.

The principal issue presented for decision is whether, under sections 446(b) and 471, I. R. C. 1954,[1] the respondent can require petitioner to change from the unit-livestock-price method of inventory valuation to the lower of cost or market method, on the ground that the unit-livestock-price method does not clearly reflect petitioner's income. If the respondent prevails on this point then two additional issues arise. They are: (1) Whether, by virtue of respondent's unchal-

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

lenged acceptance of petitioner's income tax returns for 1958 through 1965, filed using the unit-livestock-price method, the respondent is now estopped from questioning the use of such method; and (2) whether petitioner must include labor and other expenses in the inventory valuation of live cattle under the lower of cost or market method.

### FINDINGS OF FACT

Some facts have been stipulated by the parties and are found accordingly.

Auburn Packing Co., Inc. (herein called petitioner), was incorporated in the State of Washington in 1947. At the time it filed its petition in this proceeding its principal place of business was in Auburn, Wash. Petitioner filed its Federal corporate income tax return for the taxable year ended June 30, 1967, with the district director of internal revenue at Tacoma, Wash.

For a number of years, including the year in question, petitioner has owned and operated a slaughter plant located near Auburn, Wash., and has owned and operated two feedlots near Quincy, Wash. Petitioner purchases approximately 40,000 head of cattle each year. Some of the cattle are not of feeder size at the time of purchase and must be pastured on grass by independent ranchers until they reach appropriate size to be placed in the feedlots. The cattle placed in petitioner's feedlots are normally grain fed for a period of 60 to 120 days at the end of which time the fat cattle are either sold or are transferred to petitioner's slaughter plant operation. Petitioner has held no cattle for breeding purposes and the only cattle held in excess of 6 months are some of those that are first placed on pasture and then in the feedlots.

Petitioner is an accrual basis taxpayer and maintains perpetual inventory records of live cattle received and withdrawn on a first-in-first-out (FIFO) basis. From petitioner's incorporation in 1947 through its fiscal year ended June 30, 1958, the petitioner inventoried its cattle at original purchase cost plus the cost of weight gain based upon the animals' weight at inventory date, or market, whichever was lower. Beginning with the fiscal year ended June 30, 1959, and continuing to the present time, petitioner elected to use the unit-livestock-price method of inventorying its live feeder cattle. On its return for the taxable year ended June 30, 1962, which was the first year the return asked for the method used to value inventory, and continuing to the present, the petitioner has indicated that it utilizes the unit-livestock-price method. In the use of the unit-livestock-price method the petitioner values its inventories of live feeder cattle at the purchase cost plus freight-in. For those cattle placed on pasture an increment is added equal to the cost of pasturing. Since the petitioner is unable to

determine the length of time that individual cattle spend in the feed-lots, the cattle are identified by the first-in-first-out method and thus the cattle on hand at the end of the year are assumed to be the latest arrivals at the feedlots.

Petitioner's tax returns for the taxable years ended June 30, 1959, June 30, 1960, June 30, 1961, June 30, 1962, June 30, 1963, and June 30, 1965, were audited by four agents of the respondent, during which examinations no objections were raised to petitioner's use of the unit-livestock-price method. For the taxable year ended June 30, 1967, the petitioner reported a closing inventory of $3,032,866. Respondent determined that petitioner did not qualify to use the unit-livestock-price method and using the lower of cost or market method of valuation increased petitioner's closing inventory by $445,445 to $3,478,311.

OPINION

Unlike other taxpayers, who are required to use inventories whenever the production or sale of merchandise is an income-producing factor, farmers are given the option of either adopting an inventory method of accounting or of using the cash or crop-cost methods of accounting. Secs. 1.471–1, 1.471–6(a), 1.61–4(c), Income Tax Regs. If a farmer elects to use inventories, then, like other accrual basis taxpayers, he may use either the cost or the lower of cost or market method of inventory valuation. Secs. 1.471–2(c), Income Tax Regs. Additionally, two other methods of inventory valuation are available to farmers. The first, the farm-price method, provides for the valuation of inventories at market price less the direct costs of disposition. Sec. 1.471–6(d), Income Tax Regs. The second method, the unit-livestock-price method, provides for the valuation of the different classes of animals in the inventory at a standard unit price for each class. Sec. 1.471–6(e), Income Tax Regs.

The unit-livestock-price method was first incorporated into the Treasury Regulations in 1944 in order to help alleviate some of the difficulties encountered by livestock raisers in determining the inventory value of their livestock. T.D. 5423, 1945 C.B. 70. Under the unit-livestock-price method the farmer estimates the amount it costs him to raise his different types of livestock to various stages of development and establishes a standard unit price for each age level of a particular class of livestock. Sec. 1.471–6(e), Income Tax Regs. At the beginning of the first year in which the farmer adopts the unit-live-stock-price method he counts the number of head on hand in each class and values them according to his established estimates. At the end of each year the farmer similarly counts and values his livestock, using the same standard costs, to arrive at his ending inventory. If the farmer purchases any livestock during the year then such animals must initially be included in the farmer's inventory at cost. Furthermore, if

the newly acquired animal is purchased during the first 6 months of the year then the full standard unit cost for that age and class of animal is to be added to the purchase price. If, however, the animal is not purchased until the last 6 months of the year then no additional increment is to be made for that animal in the ending inventory. Sec. 1.471-6(g), Income Tax Regs. In computing his gross income for the year, the farmer adds the sales price of all livestock sold during the year to the value of his ending inventory and from this amount he deducts the value of his beginning inventory and the cost of any livestock purchased during the year. Sec. 1.61-4(b), Income Tax Regs. To arrive at net income the farmer deducts from gross income "all amounts actually expended in carrying on the business of farming." Sec. 1.162-12(a), Income Tax Regs. The regulation makes no distinction between cash and accrual method taxpayers, thus allowing accrual method taxpayers a current deduction for expenses that would normally be properly chargeable to inventory.

Petitioner utilizes the first-in-first-out method to reflect the flow of costs since it is not possible for it to attribute costs to individual cattle or even to certain groups of cattle. The effect of the use of the FIFO method is that, since the first cattle purchased are presumed to be the first ones sold, the petitioner's ending inventory has, in every year, consisted entirely of cattle acquired within the last 6 months of the year. Accordingly, under section 1.471-6(g), Income Tax Regs., petitioner is not required to add to its ending inventory any costs except for the purchase price of the newly acquired cattle. The result is that, in accord with section 1.162-12(a) of the regulations, petitioner is taking a current deduction for all expenses of raising the cattle that are in its ending inventory and is not making any corresponding increase in the value of its ending inventory as would normally be required by section 1.471-6(g).

Respondent argues that, having elected to use the accrual method of accounting, petitioner may not value its inventory in a manner that is inconsistent with the accrual method and does not clearly reflect income. Furthermore, the respondent contends that under sections 446(b)[2] and 471,[3] he has the authority to require a farmer on the accrual basis to use a method of inventory valuation that defers raising costs into inventory in order to clearly reflect income. In support of

---

[2] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(b) EXCEPTIONS —If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

[3] SEC. 471. GENERAL RULE FOR INVENTORIES.

Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be the best accounting practice in the trade or business and as most clearly reflecting the income.

this proposition the respondent cites *United States v. Catto*, 384 U.S. 102 (1966), but as we read that case we think it is distinguishable from the instant case.

The issue in *Catto* involved the validity of section 1.471–6(f)[4] of the Income Tax Regs., and whether, by virtue of the taxpayer's election to use the unit-livestock-price method to value its feeder livestock, the Commissioner could require the taxpayer to also use the unit-livestock-price method to value its breeding herd. The Supreme Court upheld the validity of the regulation as being "a reasonable exercise of the discretion rested by Congress in the Secretary and the Commissioner for the administration of the tax laws." *United States v. Catto, supra* at 114. *Catto* is thus distinguishable from this case since we are here presented, not with the question of whether the respondent may require a taxpayer to use a unitary method of accounting, but whether he can require a taxpayer to use one method of inventory valuation authorized by the regulations in lieu of another method similarly authorized by the regulations. In our opinion the respondent does not have such discretion. *Photo-Sonics, Inc.* v. *Commissioner*, 357 F.2d 656, 658 (C.A. 9, 1966); *Fort Howard Paper Co.*, 49 T.C. 275 (1967); *W. P. Garth*, 56 T.C. 610 (1971).

Here the respondent has issued a regulation permitting the use of the unit-livestock-price method of inventory valuation and the petitioner has complied with all of the procedural requirements to avail itself of the use of that method. It is our view that the respondent cannot now prevail with the argument that the method he approved in the regulation does not clearly reflect income. Section 1.471–6, Income Tax Regs., makes no mention of any authority on the part of the respondent to prevent a farmer from using the unit-livestock-price method. The only authority the respondent has in overseeing the application of the unit-livestock-price method is to adjust the unit prices and classifications used by the farmer in valuing his inventory. Sec. 1.471–6(h), Income Tax Regs.

Respondent asserts that petitioner's use of the unit-livestock-price method does not clearly reflect income, but he overlooks section 1.471–2 (b), Income Tax Regs., where it is stated:

In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with §§ 1.471–1 through 1.471–9. * * *

In *Commissioner* v. *Joseph E. Seagram & Sons, Inc.*, 394 F.2d 738 (C.A. 2, 1968), the Court of Appeals affirmed the importance of con-

---

[4] Sec. 1.471–6(f), Income Tax Regs:

A taxpayer who elects to use the "unit-livestock-price method" must apply it to all livestock raised, whether for sale or for draft, breeding, or dairy purposes. * * *

sistency citing the above language from section 1.471–2(b), Income Tax Regs.[5] Similarly, in *Klein Chocolate Co.*, 36 T.C. 142 (1961), it was stated that consistency is the key to whether a method, that is substantially in accord with the Commissioner's regulations, clearly reflects income. Petitioner has consistently used the unit-livestock-price method since the taxable year ended June 30, 1958, and while we recognize that its income may not have been reported as accurately as possible, we think the petitioner's use of the unit-livestock-price method does clearly reflect its income. It is a longstanding rule that "it is not the province of the court to weigh and determine the relative merits of systems of accounting." *Brown* v. *Helvering*, 291 U.S. 193, 204–205 (1934). In *Sam W. Emerson Co.*, 37 T.C. 1063 (1962), this Court held that if an accounting method is in accord with generally accepted accounting principles and is consistently used, then it will be regarded as clearly reflecting income for tax purposes.[6] That the unit-livestock-price method is an accepted method of inventory valuation is without doubt in light of the following statement by the Supreme Court in *United States* v. *Catto, supra* at 113:

> The unit-livestock-price method is soundly grounded in accepted principles of accounting. It has been specifically recognized by the tax laws as a valid approach to livestock accounting for more than 20 years.

Furthermore, petitioner's expert witnesses gave uncontradicted testimony that petitioner's use of the unit-livestock-price method clearly reflected its income. Therefore, we conclude that its use of the unit-livestock-price method on a consistent basis outweighs the fact that it did not precisely match expenses against income.

In view of our conclusion that petitioner's use of the unit-livestock-price method clearly reflected income, we disagree with respondent's contention, based on the Tenth Circuit's decision in *Mountain Fuel Supply Co.* v. *United States*, 449 F.2d 816 (C.A. 10, 1971), that petitioner's use of the unit-livestock-price method is not justified. *Mountain Fuel Supply Co.* merely holds that the consistent use of an improper method does not justify its continued use. We have found that petitioner's use of the unit-livestock-price method is proper. Thus *Mountain Fuel Supply Co.* is not applicable.

---

[5] See also *Koebig & Koebig, Inc.*, T.C. Memo. 1964–32, where this Court stated:

"The fact that an accrual method of reporting * * * does not always give a precise matching of income and expenses does not mean that it does not clearly reflect the income * * *; the vital point is consistency."

[6] The Court in *Emerson* based its statement on sec. 1.446–1(a)(2), Income Tax Regs., which provides in part:

A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

Respondent claims that he has the discretion under section 446(b) and section 471 to require petitioner to change its method of inventory valuation to one that more clearly reflects its income. In a recent case this Court stated that the Commissioner does not have the authority "to force a taxpayer to change from a method of accounting which does 'clearly reflect income' to a method which in the Commissioner's opinion more clearly reflects income." *W. P. Garth, supra* at 618.

The Court of Appeals for the Ninth Circuit used much the same language in *Photo-Sonics, Inc.* v. *Commissioner*, 357 F.2d at 658, when it stated:

> The statute and regulations should not be interpreted so as to permit the taxing authority arbitrarily to impose its own preferred system of accounting upon taxpayers. If a taxpayer employs a method which is acceptable under accounting standards, even though some might say that it does not conform "as nearly as may be to the best accounting practice" (Int. Rev. Code of 1954 § 471), the taxpayer's choice of method should not be disturbed if it clearly reflects income. This is particularly so when a taxpayer has consistently applied his method, without the Commissioner's challenge, for a reasonable period of time.

Similarly, in *Commissioner* v. *Joseph E. Seagram & Sons, Inc., supra*, the Court of Appeals for the Second Circuit noted that in cases where the taxpayer had used accepted methods of accounting, that did not violate any tax rules or regulations, the Commissioner has no authority to impose upon the taxpayer an accounting method or procedure preferred by him. *Commissioner* v. *Joseph E. Seagram & Sons, Inc., supra* at 742, citing *Klein Chocolate Co., supra*, and *Koebig & Koebig, Inc.*, T.C. Memo. 1964–32. In light of these cases we concluded that the respondent has no authority to require petitioner to change from the unit-livestock-price method to a method of inventory valuation that, in respondent's opinion, more clearly reflects income.

The underlying reason for respondent's objection to petitioner's use of the unit-livestock-price method is based on the 6-month provision of section 1.471–6(g), Income Tax Regs. We have no doubt that when section 1.471–6(g), Income Tax Regs., was written there were sound reasons for inclusion of the 6-month provision. It seems that the belief was that, since the standard unit costs were supposed to approximate the accumulated costs of raising an animal, it would be unfair to require that a full increment be added for an animal acquired near the end of the taxable year. To further simplify recordkeeping requirements the apparent solution was to adopt the 6-month rule. Under the 6-month rule it would be possible for a taxpayer who had adopted the unit-livestock-price method to get locked into a situation where all of his cattle were acquired in the sixth month of the taxable year. In such a case the taxpayer would find himself having to add to the purchase price of each animal the full unit cost increment, even though he had held the cattle for just over 6 months. As a result, his income would be overstated since the unit cost, which theoretically approximate

raising costs for 1 year, would exceed the costs he had actually incurred.

It must be realized that the unit-livestock-price method is at best an approximation and it will rarely be equally desirable by both parties. However, it does serve a useful purpose in that it greatly eases the bookkeeping burden on many taxpayers without an inordinate sacrifice in accuracy.

A provision similar to the 6-month rule can be found in section 1.467(a)–10, Income Tax Regs., which provides for an averaging convention that may be used in computing depreciation. Under this method, assets acquired during the first 6 months of the year can be depreciated for the entire year whereas assets acquired during the last 6 months are not entitled to be depreciated until the following year. The rationale for such a provision is again the belief that recordkeeping requirements will be greatly reduced and that over a period of years the result will be similar to the result if detailed records had been kept.

We also note that since petitioner is a farmer it could initially have elected to use the cash method of accounting and thus it would not have been required to take inventories. Sec. 1.471–6(a), Income Tax Regs. In respondent's brief it is argued that he has the authority to require a farmer who has elected to account for its operations on the accrual basis to use a method of inventory valuation that defers raising costs into inventory. In support of this argument, respondent cited *Wilkinson-Beane, Inc.* v. *Commissioner*, 420 F.2d 352 (C.A. 1, 1970). In *Wilkinson*, a funeral home was selling caskets as part of its services and had accumulated a substantial inventory of the caskets. The Court of Appeals for the First Circuit held that the Commissioner could require the taxpayer to change from the cash to the accrual method because the inventory of caskets produced a significant amount of income. The distinguishing factor between that case and the case at hand is that petitioner is a farmer, and thus under section 1.471–6(a) of the regulations is entitled to use the cash method even if inventories are a material income-producing item. The *Wilkinson* opinion is thus not applicable to cases involving farming operations. Moreover, since petitioner includes purchase costs in inventory, its use of the accrual method presents a clearer reflection of income than would its use of the cash method where no inventory would be taken.

We are not unmindful of the fact that at the time sections 1.471–6(c), (f), and (h) were incorporated into the regulations the nature of the farming industry was much different than it is today. While we doubt that the large corporate farmers have much claim to need the relaxed accounting methods available to the small farmer, we do appreciate the great difficulties encountered by the small farmer in keeping records of costs in order to determine inventory values.

However, we regard it as beyond our province to attempt to make distinctions based upon the size and the nature of the farming operation. Although we do not know if the 6-month provision has been a stimulus for the growth of feeder operations, we think it is of value when applied to the small farming situation. In most cases the small farmer will often raise the cattle for several years before they are slaughtered or sold. Therefore no problem would arise regarding cattle purchased in the last 6 months since they would be on hand the following year and would then be included in ending inventory.

Respondent has argued in the alternative that petitioner is not a "livestock raiser" as that term is used in the regulations permitting use of the unit-livestock-price method.

He contends that the references to livestock raiser mean livestock breeder and since petitioner holds no cattle for breeding it is not entitled to use the unit-livestock-price method. We can find no support for the contention that livestock raiser is to be interpreted to mean livestock breeder. In fact, section 1.471-6(g), Income Tax Regs., clearly refers to livestock raisers other than breeders when it discusses the purchase by the raisers of animals that are not mature at the time of purchase.

Accordingly, we hold that respondent cannot require petitioner to change from the unit-livestock-price method of inventory valuation to the lower of cost or market method. Having reached this conclusion on the primary issue, it is unnecessary for us to consider the matters of estoppel and the inclusion of labor and other expenses in inventory under the lower of cost or market method.

To reflect concessions made by the parties,

*Decision will be entered under Rule 50.*